No. 83-74

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MAURICE C. GOSNAY & PAMLA C. GOSNAY,

Plaintiffs and Respondents,

-vs-

BIG SKY OWNERS ASSOCIATION, AND
ROBERT J. FRITZ, et al.,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable W. W. Lessley, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Morrow, Sedivy & Olson, Bozeman, Montana
Edmund Sedivy and Terrence Schaplow argued,
Bozeman, Montana

For Respondents:

Moore, Rice, O'Connell & Refling, Bozeman, Montana
Barry O'Connell argued, Bozeman, Montana

---

Submitted: June 9, 1983

Decided: July 28, 1983

Filed: JUL 2 8 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Big Sky Owners Association and the individual members of the Big Sky Architectural Committee appeal the October 7, 1982, judgment of the Eighteenth Judicial District Court which allowed Maurice and Pamla Gosnay to construct a stable and keep horses on their property and barred the Architectural Committee from ordering removal of the fence the Gosnays built around their property.

Sweetgrass Hills is a subdivision in the Big Sky, Montana area and is owned by Big Sky of Montana, Inc. Protective covenants were issued by Big Sky of Montana, Inc., to control the uses to which the subdivision can be put. Covenant 1(A)(i) of the protective covenants grants to the Big Sky Architectural Committee the express authority to approve, change or overrule the location of any structure on any residential lot in the subdivision. Other protective covenants provide guidelines to be followed by the Committee when exercising its authority. The Gosnays purchased land by a warranty deed which is subject to the protective covenants. Therefore, those covenants control in this appeal. Heritage Heights Home Owners Ass'n v. Esser (1977), 115 Ariz. 330, 565 P.2d 207.

Maurice and Pamla Gosnay were shown land in the Sweetgrass Hills Subdivision by realtor David Hyde. The Gosnays became interested in ten acres of land referred to as Tract II, the largest tract in the subdivision.

Gosnays expressed to Hyde an interest in constructing a stable and boarding their horses on the land. The Gosnays own the Karst Camp and use their Belgian Draft horses to pull sleighs in the winter. Mr. Hyde testified that after reviewing the prohibitive covenants with the Gosnays, he

informed them that a decision regarding the horses and stable would be up to the Architectural Committee. Mr. Gosnay testified that Mr. Hyde told him there would be no problems, under the prohibitive covenants, in having horses and a stable on that land.

The Gosnays purchased Tract II and began to plan a jackleg fence to completely enclose their property. The Architectural Committee refused to grant Gosnays permission to build the fence. Construction of the fence was commenced in November of 1981, despite lack of approval.

On November 9, 1981, Maurice and Pamla Gosnay filed a declaratory judgment seeking to judicially establish the authority of the Big Sky Owners Association (BSOA) to designate Gosnays' land as an area where stables could be constructed under the applicable prohibitive covenants. BSOA filed a complaint in December 1981, seeking a preliminary injunction for the removal of the fence Gosnays had begun constructing. Gosnays then filed a third party complaint on January 13, 1982, against the members of the Big Sky Architectural Committee, attempting to establish the validity of the fence construction.

The actions were consolidated and a bench trial was held September 7 and 8, 1982, in the District Court of the Eighteenth Judicial District. On October 8, 1982, a judgment was entered allowing Gosnays to keep their fence and horses and to build a stable. Gosnays were also awarded $5,000.00 in attorneys' fees on November 17, 1982. BSOA and the Architectural Committee now appeal those judgments. We vacate the judgment of the District Court.

Four issues are presented to this Court for our review:

1. Did the District Court err in allowing Gosnays' jackleg fence to remain on their property?

2. Did the District Court err in allowing Gosnays to build a stable on their property?

3. Did the District Court err in allowing horses to be kept on the property?

4 Did the District Court err in ordering defendants to pay Gosnays' attorneys' fees?

The following are the primary Prohibitive Covenants relevant to issues one, two and three:

> "NOW, THEREFORE, Big Sky does hereby establish, dedicate, declare, publish and impose upon the premises the following Protective Covenants which shall run with the land and shall be binding upon and be for the benefit and value of Big Sky and all persons claiming under it, its grantees, successors and assigns and shall be for the purpose of maintaining a uniform and stable value, character, architectural design, use and development of the premises. These Protective Covenants shall apply to the entire premises and to all improvements placed or erected thereon unless otherwise specifically excepted and shall have perpetual existence unless terminated by law or amended as herein provided.

### 1. USE

> "F. TRACTS I AND II
>
> "a. Tracts I and II shall be used for single family residences only. No buildings or improvements shall be placed, constructed, reconstructed, altered or remodeled on any site except to provide for a single family dwelling with an attached or detached garage. Any plans for any dwelling on either tract shall provide for off-street parking for at least two vehicles.
>
> "b. Tract I may be further subdivided by the owner thereof into not more than three separate, smaller tracts for residential use only and for the erection of one single family residence with attached or detached garage on each separate tract, each such small tract to be not less than one acre in size.
>
> "c. Tract II may similarly be further subdivided by the owner thereof into not more than four separate, smaller tracts for residential use only and for the erection of one single family residence with attached or detached garage on each separate tract, each such smaller tract to be not less than one acre in size.
>
> " . . .

4

## 3. ARCHITECTURAL COMMITTEE

"D.  No building, construction, reconstruction, alteration, remodeling, landscaping, parking, fence, wall or other improvement shall be placed, constructed, erected, repaired, restored, reconstructed, altered, remodeled, added to or maintained on any lot or tract until building drawings, plans and specifications (which must have been prepared by a licensed architect for all construction, reconstruction, alteration or remodeling), and such other information as the Committee may reasonably require, including without being limited to, colors, building materials and models, have been submitted to, and approved by, a majority of the Committee in writing; nor may the same be commenced until the Committee shall have issued a permit allowing for such improvements. "...

## 8. ANIMALS

"Animals such as dogs, cats, birds or horses are allowed in the subdivision as pets only and so long as they do not constitute a nuisance to others. Kennels, stables or other facilities for the keeping or retention of animals shall be restricted to areas so designated by the Committee. The commercial breeding, care, raising or keeping of any animal is forbidden. If a particular animal or animals shall, in the discretion of the Committee, become a nuisance, the Committee shall have the authority to require that the same be kept tethered or confined on the owners property and the Committee may further require that when the said animal or animals are taken from the said property such animals must then be kept on a leash or bridle and must be under the owner's control at all times."

The same rules of construction apply to interpreting these prohibitive covenants as apply to interpreting contracts.  Nakis v. Cross (1980), 246 Ga. 658, 272 S.E.2d 312.  Therefore, we must read the covenants as a whole in order to ascertain their meaning, rather than reading any one covenant or part of a covenant in isolation.  Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 367, 600 P.2d 163, 168. Where, as here, the language of the covenants is clear and explicit, that language will govern our interpretation of the covenants as a whole.  "[W]here the words are plain, unambiguous, direct and certain and admit of but one meaning, then it is the duty of this Court to declare what the terms

5

of the covenants contain . . . " Higdem v. Whitman (1975), 167 Mont. 201, 208, 536 P.2d 1185, 1189.

DID THE DISTRICT COURT ERR IN ALLOWING THE FENCE?

Construction of a fence requires prior approval by the Architectural Committee - covenant 3(D). The Committee's discretion to approve or disapprove a fence must be governed by the prohibitive covenants and must be reasonably exercised. To do otherwise would be an abuse of discretion by the Committee. Melson v. Guilfoy (Mo.App. 1980), 595 S.W.2d 404.

The Architectural Committee did not abuse its discretion when it refused Gosnays permission to build their fence. Gosnays' fence is contrary to Big Sky's overall plan for "openness." No other tract or lot in the subdivision is totally enclosed by a fence. Fences which have been allowed by the Architectural Committee have been "border" fences for landscaping purposes and an 8' by 10' cyclone fence around a dog pen. These facts support the Committee's decision and also negate the assertion that, by allowing other fences, the Committee has waived the prohibitive covenant regarding fences. The District Court's judgment allowing Gosnays' jackleg fence to remain on their property is clearly erroneous and we reverse it.

DID THE DISTRICT COURT ERR IN ALLOWING STABLES?

Construction of a stable requires that the Architectural Committee designate the area(s) in which stables can be built. Covenant 8. Prohibitive covenant 1(F)(a) restricts buildings on Tract II (Gosnays' tract) to single family residences and garages. Therefore, the Architectural Committee acted properly in denying permission to construct a stable on Tract II.

6

This decision is not to be construed as a complete ban of stables from the Sweetgrass Hills Subdivision. Stables are permitted, but may be located only in areas designated by the Architectural Committee. In the past, those areas have been in the subdivision's agricultural tracts. Stables are not allowed on tracts which are limited by the covenants to single family residences and garages.

DID THE DISTRICT COURT ERR IN ALLOWING HORSES?

The District Court found that horses, as pets, could be kept on plaintiffs' tract. This action could only be justified if the Architectural Committee abused its discretion in banning the horses. See Exhibit 29, a letter from the Committee's attorney, states:

> "Certainly horses are allowed in the subdivision as pets provided they are not a nuisance to others. It would be very likely that if a horse was kept year-round without proper stables it would be a nuisance."

On appeal appellants' brief argues valiently in support of this nuisance determination:

> "Additionally, these horses, and their ensuing, resounding, egregious divestitures of abdominal gas echoing through the hills and vales of this otherwise peaceful area, closely akin to the point blank discharge of a double-barreled shotgun, have utterly no place in this quiet, residential hamlet of Big Sky."

While the loquacious author is guilty of hyperbole the nuisance premise is difficult to dispute. Certainly we are unable to say that the Committee, in finding unhoused horses to be a nuisance, abused its discretion as a matter of law.

ATTORNEYS' FEES

Covenant 14(D) governs attorneys' fees and provides in relevant part:

> "D. Actual costs, expenses and reasonable attorneys' fees connected with correcting, remedying, abating, preventing or removing any

7

> violation or threatened violation of these
> covenants incurred either through litigation, entry
> or self-help shall constitute a claim by the owner
> or the Committee initiating such action against the
> owner of the property which is the subject of such
> violation or threatened violation. Such claim
> shall not, however, exceed Five Thousand Dollars
> ($5,000.00) for any one claim and shall be
> enforcable through appropriate court action."

Pursuant to this covenant, appellants are entitled to recover from Gosnays the attorneys' fees generated by this litigation in an amount not to exceed $5,000.00.

This matter is reversed and remanded to the District Court with instructions to issue to Gosnays a mandatory injunction to remove the jackleg fence enclosing their land and to conduct a hearing on the reasonable attorneys' fees to be awarded appellants.

Justice

We concur:

Chief Justice

Justices

Justice Shea specially concurring:

I join the opinion of the Court but have a few comments on the findings and conclusions entered in this case.

In their appeal the defendants also claim that the trial court adopted virtually verbatim if not entirely verbatim, the proposed findings and conclusions of the plaintiff's counsel. Plaintiff's counsel does not dispute this claim. From time to time the trial courts have been quite critical of the decisions of agencies and boards where the reasons for their decisions are not set forth in the orders of the agencies involved. It seems to me that the trial courts have really no reason to be critical of agency decisions when the trial courts simply rubber stamp the proposed findings and conclusions of the party that they believe should win the lawsuit. This practice hardly bespeaks of a careful, considered analysis of the evidence and the law.

The parties, counsel, and the public are entitled from the trial courts to more than the duplicating of proposed findings and conclusions presented by a partisan to the cause. Of course I know that my view of the evils of verbatim parroting of findings and conclusions does not hold sway for too long in this Court, but I will continue to adhere to this view.

_____
Justice