No. 95-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STEWART NEWMAN, SUSAN NEWMAN, DALE STELTER,
MARY STELTER, DAVE KLATT and CORY KLATT
and SUSAN BRANTSMA,

      Petitioners and Respondents,

  v.

ARTHUR WITTMER, JR. and CARLENE GAIL WITTMER,

      Respondents and Appellants.



FILED

JUN 04 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

        Larry Jent; Williams, Jent & Dockins,
Bozeman, Montana

      For Respondents:

        Donald E. White, Attorney at Law, Bozeman,
Montana

      For Amicus:

        Brenda R. Cole; Swandal, Douglass, Frazier
& Cole, Livingston, Montana (Montana Manufactured
Housing & Recreational Vehicle Association)

Submitted on Briefs: April 25, 1996

Decided: June 4, 1996

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants, Arthur and Carlene Wittmer (Wittmers), appeal from the Gallatin County, Eighteenth Judicial District Court's Findings of Fact and Conclusions of Law determining that the Wittmers' mobile home violated subdivision covenants. In its Conclusions of Law, the District Court issued a mandatory injunction ordering the Wittmers to remove their home from their lot in the subdivision. The court also concluded that Stewart Newman, Susan Newman, Dave Stelter, Mary Stelter, Dave Klatt, Cory Klatt and Susan Brantsma (Respondents) were entitled to recover attorney's fees and costs. We affirm in part and reverse in part.

The two issues on appeal are:

1. Whether the Wittmers' home is a mobile home and, thus, prohibited by the subdivision's restrictive covenant for use as a permanent residence?

2. Did the District Court err in awarding attorney's fees to the Respondents?

## BACKGROUND

The parties in this action are real property owners in the Bear Trap Ranch Subdivision No. 2 (subdivision), Gallatin County, Montana. In 1971, the owners of the subdivision adopted restrictive covenants "designed to provide a uniform plan for the development of the property covered." The fourth restrictive covenant provides:

> 4. <u>Trailers, Mobile *Homes*, Basement Homes and Temoorarv Structures.</u> No structure of a temporary character, including but not limited to trailers, *mobile homes,* basements, tents, shacks, garages, barns or other out-bildings [sic] shall be used upon any lot or portion thereof at any time as a permanent residence, provided,

2

however, this shall not exclude the temporary parking for short periods of time of self-powered trailers or small trailers towed by passenger cars.   [Emphasis added.]

In 1991, the Wittmers bought a 26 feet by 60 feet Brookfield "manufactured home" from Ponderosa Homes in Belgrade, Montana. After obtaining the required "Mobile/Manufactured Home[1] Movement Declaration," the home was hauled to the Wittmers' lot in the subdivision.   See § 61-4-310, MCA.   The home is designed to be hauled by truck in two sections.   It has a permanent steel I-beam frame to attach wheels, axles, and a hitch with which to pull the home.   Upon its arrival in the subdivision, the home was placed on a prepared foundation and the attached wheels and the hitch were removed.   The home has a Certificate of Title issued by the Montana Department of Justice, Motor Vehicle Division, in which the home is described as a 1992 Brookfield trailer. The Motor Vehicle Division issued a title number and a vehicle identification number for the home as required under Montana law.   See §§ 61-3-107 and 61-3-202, MCA.

The foundation prepared for the Wittmers' home consists of three concrete pads running the length of the home.   One pad is seven feet wide the others are two feet wide.   The pads are fitted with cable tie downs to fasten the home to the foundation.   The home was bolted to the foundation and Styrofoam skirting was placed around its base to keep the wind from blowing between the floor and the foundation.   The Gallatin County tax assessor testified that

---

[1]   The terms mobile home and manufactured home are used interchangeably by the State and by the manufactures.

because the foundation is not permanent, the home was assessed as personal rather than real property.

Two days after the home was moved into place and had been roofed and carpeted, the Respondents sent the Wittmers a letter informing them that their home violated the subdivision's restrictive covenants.

## DISCUSSION

1. Whether the Wittmers' home is a mobile home and, thus, prohibited by the subdivision's restrictive covenant for use as a permanent residence?

In reviewing a district court's conclusions of law, we determine whether the court's conclusions are correct. Maloney v. Heer (1993), 257 Mont. 500, 504, 850 P.2d 957, 959 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603). The standard of review of a district court's findings of fact is whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. To determine if the court's findings are clearly erroneous we first determine whether the findings are supported by substantial evidence. Daines, 888 P.2d at 906. If the findings are supported by substantial evidence, we determine whether the district court has misapprehended the evidence. Daines, 888 P.2d at 906. Finally, if both these prongs are satisfied, this Court may still determine that a finding is clearly erroneous if, after a review of the record, we have a definite and firm conviction that a mistake has been committed. Daines, 888 P.2d at 906.

The Wittmers argue that the District Court's conclusion of law

4

that their home is a mobile home prohibited by the covenants is incorrect for two reasons. First, they argue that the language of the covenant prohibits "structures of a temporary character" not permanent mobile homes. Second and alternatively, they argue that their home is not a mobile home.

The same rules of construction apply to interpreting restrictive covenants as apply to interpreting contracts. Gosnay v. Big Sky Owners Ass'n (1983), 205 Mont. 221, 227, 666 P.2d 1247, 1250. We read the covenants as a whole to ascertain their meaning. Gosnav, 666 P.2d at 1250. Where the language of the covenants is clear and explicit, that language will govern our interpretation of the covenants as a whole. Gosnav, 666 P.2d at 1250. The language of the covenant is to be understood in its ordinary and popular sense. Section 28-3-501, MCA; Hillcrest Homeowners Ass'n v. Wiley (1989), 239 Mont. 54, 56, 778 P.2d 421, 423. Additionally, restrictive covenants are to be strictly construed and ambiguities in a covenant are to be construed to allow free use of the property. Town & Country Estates Ass'n v. Slater (1987), 227 Mont. 489, 492, 740 P.2d 668, 670-71 (quoting State v. District Court (1980), 187 Mont. 126, 130, 609 P.2d 245, 248). However, the free use of the property must be balanced against the rights of the other purchasers in the subdivision. Town & Countrv, 740 P.2d at 671. Generally, restrictive covenants are valid if they tend to maintain or enhance the character of a residential subdivision and if they are used in connection with a general plan or scheme. Town & Country, 740 P.2d at 671.

Regarding the Wittmers' first argument that the language of the covenant prohibits "structures of a temporary character," not mobile homes, the relevant language of the subdivision covenant states:

> 4. Trailers, *Mobile Homes,* Basement Homes and Temporary Structures. No structure of a temporary character, including but not limited to trailers, *mobile homes,* basements, tents, shacks, garages, barns or other out-bildings [sic] shall be used upon any lot or portion thereof **at** any **time** as a permanent residence. . . [Emphasis added.]

The Wittmers argue that the terms following "including but not limited to" modify the term "structure of a temporary character." According to the Wittmers, the fact that mobile homes, basements, garages, and barns are not temporary structures creates an inherent ambiguity in the covenant. Given the Wittmers' interpretation, the only structures barred by this covenant are structures which are temporary such as trailers, tents and perhaps shacks. Notwithstanding the potential debate over whether a barn, garage or basement is a structure of "temporary character," there is little doubt but that a mobile home can be considered to be a structure of a "temporary character" and that it is included within the proscription of the covenant.

The language of the covenant is clear. The covenant expressly prohibits *use* of a mobile home as a permanent residence. Whether the covenant wrongly characterizes garages, basements, barns, or even mobile homes as structures of temporary character is beside the point. The restrictive covenant has defined its own terms and has clearly included "mobile homes" as structures which shall not

be used as permanent residences. We hold that the District Court correctly concluded that the subdivision covenants clearly and explicitly prohibit mobile homes as permanent residences.

The Wittmers' second argument, that the District Court erroneously found that their home is a mobile home, is contradicted by Montana law. The covenant does not define the term mobile home, thus, we understand the term in its ordinary and popular sense. Hillcrest Homeowners Ass'n, 778 P.2d at 423. In its Findings of Fact, the District Court determined that the Wittmers' "structure is a mobile home under Montana law." The court specified the following characteristics and events that led to the court's finding that the home was a mobile home: the Wittmers completed a "Mobile/Manufactured Home Movement Declaration" before moving their home; the home is described as a "Manufactured Home by Fleetwood;" the home was issued a Montana Motor Vehicle Certificate of Title number and a vehicle identification number; the home is listed as a "trailer" on the Certificate of Title; the home was brought to the lot in two separate units and then joined together; the home has its own steel frame undercarriage and uses axles and wheels for the purpose of transport; the home has metal joists; the home is taxed as personal property; the home is not set on a permanent foundation; and the home is designed to be moved from one place to another by "independent power connected thereto."

Respondents allege that statutory definitions of mobile home are applicable to the term "mobile homes" as used by a restrictive covenant. We agree that statutory definitions provide guidance in

7

interpreting the ordinary and popular meaning of undefined terms in a restrictive covenant. This Court has previously looked to statutory definitions of mobile homes to determine if a structure were prohibited by a restrictive covenant. DeLaurentis v. Vainio (1976), 169 Mont. 520, 523, 549 P.2d 461, 463. Other courts also apply statutory definitions in interpreting restrictive covenants. See Hill v. Community of Damien Molodai (N.M. 1996), 911 P.2d 861, 867-68 (using the definition of family within the zoning ordinances as persuasive evidence for a proper interpretation of the undefined term in the restrictive covenant); Westwood Homeowners Ass'n, Inc. v. Lane County (Ore. 1993), 864 P.2d 350, 355 (applying the statutory definitions of liens and encumbrances to restrictive covenants); Adult Group Properties, Ltd. v. Imler (Ind. Ct. App. 1987), 505 N.E.2d 459, 465-67 (applying definitions from statutes, case law and Black's Law Dictionary to interpret the term family in a restrictive covenant); LuMac Dev. Corp. v Buck Point Ltd. Partnership (Ohio Ct. App. 1988), 573 N.E.2d 681, 685-86 (looking to the statutory definitions of house trailer and manufactured home to determine the ordinary meaning of those terms in a restrictive covenant). Consequently, we look to the following statutory definitions for guidance in interpreting the ordinary meaning of mobile home in the restrictive covenant.

"Mobile home" is defined several times in the Montana Code Annotated. The Wittmers' home fits under each of these definitions based on its dimensions, its transportability, and its designation as a trailer on its Certificate of Title. Under Title 15,

8

Taxation, mobile home is defined twice. Initially at § 15-1-101 (1)(1),MCA:

> The term "mobile home" means forms of housing known as "trailers", "housetrailers", or "trailer coaches" exceeding 8 feet in width or 45 feet in length, designed to be moved from one place to another by an independent power connected to them, or any trailer, housetrailer, or trailer coach up to 8 feet in width or 45 feet in length used as a principal residence.

Chapter 24, Special Property Tax Applications, Part 2, Mobile Homes, Section 15-24-201(3), MCA, re-defines mobile home as follows:

> "Mobile home" means forms of housing known as "trailers", "housetrailers", or "trailer coaches" exceeding 8 feet in width or 32 feet in length, designed to be moved from one place to another by an independent power connected thereto.

Additionally, Title 61, Motor Vehicles, under miscellaneous, § 61-1-501, MCA, provides the following definition:

> "Mobile home" or "housetrailer" means a trailer or a semitrailer that is designed, constructed, and equipped as a dwelling place, living abode, or sleeping place (either permanently or temporarily) and is equipped for use as a conveyance on streets and highways . . .

Respondents argue that § 15-24-201(3), MCA, clearly defines mobile home and that the Wittmers' home is encompassed in this definition. The Wittmers counter that because the definition found at § 15-24-201(3), MCA, is from Chapter 24, Special Property Tax Applications, and because the definitions are prefaced with the phrase "[a]s used in this part," that this definition of mobile home is confined to property tax purposes only. However, here, we are not applying one part of the code to a different part of the code. See § 1-2-107, MCA; Stratemeyer v. Lincoln County (Mont.

9

1996), 915 P.2d 175, 181, 53 St.Rep. 245, 250; State ex rel. Dep't of Health v. LaSorte (1979), 182 Mont. 267, 273, 596 P.2d 477, 481. Rather, as we have stated, we look to all the statutory definitions of mobile home for guidance in interpreting the popular and ordinary meaning of mobile homes in the restrictive covenant.

Alternatively, the Wittmers argue that the definition found at § 15-24-201(3), MCA, cannot apply to their home because the definition states that a mobile home is "designed to be moved from one place to another by an independent power connected thereto." They assert that because their home was designed to be moved only once, the definition does not describe their home. We cannot accept this statutory interpretation. The statute says nothing about how many times the home is to be moved, only that it is designed to be moved. The record shows that the Wittmers' home was moved onto the site by being hauled down the highway as contemplated by § 15-24-201(3), MCA.

Additionally, our case law definition of mobile home encompasses the Wittmers' home. In Timmerman v. Gabriel (1970), 155 Mont. 294, 470 P.2d 528, the Gabriels appealed the district court's mandatory injunction requiring them to remove their mobile home because the subdivision's covenants prohibited the use of trailers as residences. Similar to the instant case, the covenant in question stated:

> NO structure of a temporary character, trailer, basement, tent, shack, garage, barn or other out building shall be used on any lot at any **time,** as a residence, either temporarily or permanently . . .

Timmerman, 470 P.2d at 529. The issue was whether the Gabriels'

10

double wide mobile home was a trailer and thus prohibited as a residence by the covenant. The home was composed of two sections, ten feet wide by fifty feet long, which were designed to be bolted together. Each section had a steel frame with springs, axles, wheels, and a drawbar. The home was hauled to the lot and placed on a concrete block foundation. This Court held that the characteristics of the mobile home were very similar to the typical trailer house and the fact that some of the features used to transport the home were removable did not change the basic structure of the home. Timmerman, 470 P.2d at 530. Nor did the fact that the trailer was placed on a foundation and connected to utilities transform it to a permanent residence within the meaning of the covenant. Timmerman, 470 P.2d at 530. We held that the restrictive covenant prohibited a type of structure and that the nature of the construction of the home rather than its subsequent mobility was determinative. Timmerman, 470 P.2d at 530.

A covenant prohibiting mobile homes as permanent residences was brought before this Court again in DeLaurentis, 549 P.2d 461. In DeLaurentis, the restrictive covenant in question prohibited trailers or mobile homes as permanent residences. The owners of the home argued that it was not a mobile home but rather a modular home and therefore not in violation of the covenant. The district court agreed. DeLaurentis, 549 P.2d at 462. Thus, the controlling issue on appeal was whether the home in question was a mobile or a modular home. The home was a Barrington double wide "mobile home" consisting of two sections 12 feet wide by 64 feet long. The home

11

was certified by the State of Idaho Recreation and Mobile Home Department. This Court held that the home met the definition of mobile home under Montana statutory law and reversed the district court's finding that the home was a modular home and not a mobile home. DeLaurentis, 549 P.2d at 464.

In the instant case, the District Court's determination that the Wittmers' home is a mobile home comports with the statutory definitions of mobile home and conforms with our previous decisions interpreting restrictive covenants prohibiting mobile homes. Additionally, the home has a registered vehicle title on which it is described as a trailer, it has a vehicle identification number, and the Gallatin County Appraiser lists it as a mobile home. It has a permanent steel I-beam frame for attaching wheels, axles and a hitch. Given these characteristics along with the statutory and case law definitions, the District Court's finding that the Wittmers' home is a mobile home surely conforms to the ordinary definition of mobile home as contemplated by the restrictive covenant. We hold that the District Court's finding that the Wittmers' home is a mobile home is supported by substantial evidence, the court did not misapprehend the evidence, and no mistake has been committed.

2. Did the District Court err in awarding attorney's fees to the Respondents?

In addition to granting a mandatory injunction, the District Court awarded the Respondents attorney's fees and costs. The general rule for awarding attorney's fees is that, absent statutory or contractual authorization, attorney's fees will not be awarded.

12

Greenwood v. Steve Nelson Trucking (1995), 270 Mont. 216, 221, 890 P.2d 765, 768. However, a successful applicant for a writ of mandate may recover reasonable attorney's fees. See Kadillak v. Montana Dep't of State Lands (1982), 198 Mont. 70, 643 P.2d 1178. Respondents argue that under the court's equitable powers to grant a mandatory injunction the court has the power to grant attorney's fees because the remedy of mandatory injunction is identical to the remedy of mandamus. Alternatively, they argue that, as a matter of equity, courts can award attorney's fees to make an injured party whole. Greenwood, 890 P.2d at 768; Goodover v. Lindey's (1992), 255 Mont. 430, 446, 843 P.2d 765, 774-75.

This Court has distinguished a mandatory injunction from mandamus as follows:

> Another *material* distinction between the two remedies is found in the relief which they are designed to afford. Injunction is a remedy to restrain the doing of injurious acts or, in its mandatory form, to require the undoing of injurious acts and restoration of the status quo, while mandamus commands the performance of a particular duty which rests upon the defendant, or respondent, because of his official status or by operation of law. . .

In re the "A" Family (1979), 184 Mont. 145, 153, 602 P.2d 157, 162 (quoting 42 Am.Jur.2d 750 *Injunctions* § 19). In "A" Family, we held that because the district court order commanded the school district to perform a clear legal duty, the true nature of the order was that of mandamus and not that of a mandatory permanent injunction. 602 P.2d at 162.

The same cannot be said of the instant case because the requirements for a writ of mandate were not met. Pursuant to § 27-26-102, MCA, a two-part standard applies to the issuance of a writ

13

of mandate. _Franchi_ v. County of Jefferson (Mont. 1995), 908 P.2d 210, 212, 52 St.Rep. 1229, 1230; Becky v. Butte-Silver Bow Sch. Dist. 1 (Mont. 1995), 906 P.2d 193, 212, 52 St.Rep. 1154, 1155; State ex rel. Chisholm v. District Court (1986), 224 Mont. 441, 443, 731 P.2d 324, 325. First, the writ is available when the party requesting it is entitled to the performance of a clear legal duty by the party against whom the writ is sought. _Becky_, 906 P.2d at 195. Second, if there is a clear legal duty, the district court must grant the writ if there is no plain, speedy, and adequate remedy available in the ordinary course of law. Section 27-26-102(2), MCA; _Franchi_, 908 P.2d at 212. In _Chisholm_, we clarified the inquiry as follows: "A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it." _Chisholm_, 731 P.2d at 325.

The cases Respondents cite in support of the proposition that a mandatory injunction can fill the role of a writ of mandamus, involve the duties of governmental agencies. _See_ Bissey v. City of Marion (Kan. 1919), 178 P. 611; State v. Board of County Comm'rs (Okla. 1940), 107 P.2d 542. These decisions are further support for the proposition that mandamus is the appropriate vehicle to compel "the performance of a particular duty which rests upon the defendant, or respondent, because of his official status or by operation of law." _"A" Family,_ 602 P.2d at 162.

Here, the restrictive covenant did not impose a legal duty

14

upon the Wittmers because of their "official status;" they had none. Nor did it impose a duty by operation of law. Thus, the claim fails the first prong of the two part test and the resulting judgment cannot be considered a writ of mandamus. We decline to equate a mandatory injunction with a writ of mandamus for purposes of awarding attorney's fees.

Additionally, we reject the invitation to award attorney's fees on the basis of equitable principles. We have applied the equitable exception to the general rule only in those unique situations in which a party is forced into a frivolous lawsuit and must incur attorney's fees to dismiss the claim. In such cases, "equity requires an award of attorney fees to 'make the party whole."' Goodover, 843 P.2d at 775. We have affirmed the grant of attorney's fees to defendants in cases where there were no reasons or justifications for the suit, and where a party had to defend against a frivolous action through no fault of her own. See Stickney v. State (1981), 195 Mont. 415, 636 P.2d 860; Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 595 P.2d 360; Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114. We have also held that where a plaintiff, or as in the instant case a petitioner, chooses to institute a suit against others, an award of attorney's fees to the plaintiff will normally be precluded. Goodover, 843 P.2d at 776. Here, Respondents were not forced to defend a wholly frivolous litigation, rather they initiated this suit. Respondents' suit was both reasonable and justifiable, it does not present one of the rare cases in which a district court could use

15

its equitable powers to award such fees.  We hold that the District Court erred in awarding attorney's fees to the Respondents.

Affirmed in part and reversed in part.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

_____
Justices

16