No. 96-611

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

WARREN V. TOAVS, JEFFREY W. TOAVS,
and JANA L. TOAVS,

Plaintiffs and Appellants,

v.

RANDY J. SAYRE, Individual, DONNA SIPES,
Individual, BRUCE R. SUNDSETH and LANA
G. SUNDSETH, Individuals,

Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane B. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Stewart R. Kirkpatrick, Bruce F. Fain; Murphy,
Kirkpatrick & Fain, Billings, Montana

For Respondents:

Earl J. Hanson; Hanson, Roybal, Lee & Todd,
Billings, Montana (for Sayer/Sipes)

William J. Mattix; Crowley, Haughey, Hanson, Toole
& Dietrich, Billings, Montana (for Sundseths)

Submitted on Briefs: February 6, 1997

Decided: March 4, 1997

Filed:

_____
Clerk
Justice W. William Leaphart delivered the Opinion of the Court.

The Toavses filed suit against Sayre, Sipes and the Sundseths to enforce restrictive covenants prohibiting mobile homes within a subdivision. Each party filed a motion for summary judgment. The District Court found that the covenants in question were ambiguous and granted summary judgment to the owners of the mobile homes in question. The Toavses appeal from that judgment. We affirm as to Sayre/Sipes and reverse as to the Sundseths.

BACKGROUND

The Toavses own property within a subdivision in Yellowstone County, Montana. All lots within the subdivision are subject to certain covenants which became effective on August 12, 1977. All of the parties to this litigation, plaintiffs and defendants alike, purchased property within the exterior boundaries of the subdivision and their respective properties are subject to the restrictive covenants.

Sayre and Sipes purchased their tract in 1977; the Toavses purchased their tracts in 1993 and 1994. Sundseths purchased their tract in 1994. Sayre/Sipes built their main residence in 1977. That residence is not in question. Sayre/Sipes placed a manufactured guest house on the tract in October 1993. Donna Sipes' elderly mother lives in the guest house. The Toavses seek to have that guest house removed from the property.

The Sundseths also purchased a manufactured home which they placed on their property. That home is also at issue. Both of the homes in question were purchased from mobile home dealers and were transported to the property where they were permanently connected to and placed upon a foundation. Both homes had wheels and axles

when purchased. The wheels and axles were removed when the homes were attached to their respective foundations.

## STANDARD OF REVIEW

This Court reviews a district court's summary judgment rulings de novo. Estate of Strever v. Cline (Mont. 1996), 924 P.2d 666, 669, 53 St.Rep. 576, 578. This Court "will apply the same evaluation as the district court based on Rule 56, M.R.Civ.P." Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

### The Rules for Interpreting Restrictive Covenants

In interpreting restrictive covenants, we apply the same rules as apply to interpreting contracts. Gosnay v. Big Sky Owners Ass'n (1983), 205 Mont. 221, 227, 666 P.2d 1247, 1250. We read all covenants as a whole to ascertain their meaning. Gosnay, 666 P.2d at 1250. Where the language of the covenant is clear and explicit, that language will govern our interpretation of the covenants as a whole. The language of the covenant is to be understood in its ordinary and popular sense. Section 28-3-501, MCA. Restrictive covenants are to be strictly construed and ambiguities in a covenant are to be construed to allow free use of the property. Town & Country Estates Ass'n v. Slater (1987), 227 Mont. 489, 492, 740 P.2d 668, 670-71 (quoting State v. District Court (1980), 187 Mont. 126, 130, 609 P.2d 245, 248). However, the free use of the property must be balanced against the rights of the other purchasers in the subdivision.

### The District Court Ruling

As applicable to this case, Paragraph 5 of the Declaration of Restrictions and Conditions provides as follows:

No tent, trailer or other temporary shelter [missing words] for dwelling purposes nor shall any basement or garage be so used unless and until there is a completed private single family dwelling used in connection therewith. The work of constructing the dwelling and landscaping shall be prosecuted diligently from the commencement thereof until completion. No mobile homes or temporary dwellings may be used as the sole dwelling on any tract after July 1, 1977. [Emphasis added.]

The District Court held that, due to the absence of critical words, the first sentence was ambiguous. As to the last sentence, it held: "In reading the covenants as a whole, it is unclear whether that sentence restricts only mobile homes that are temporary dwellings or all mobile homes, including those placed on cement blocks, permanently hooked up to utilities and sanitary facilities, and exhibiting the proper siding." In light of this ambiguity, the court felt constrained to interpret the covenant in favor of free use of the property. Accordingly, it granted summary

judgment in favor of Sayre/Sipes and the Sundseths. We address the issues separately as they pertain to the two homes in question.

The Sundseths' Home

The Sundseth home was originally located at Big Sky Mobile Homes where wheels were mounted to attached axles. It was then attached to a hitch and towed to the Sundseths' property where the wheels and axles were removed. The home was then fitted with masonite siding and asphalt shingles and attached to utilities. The Sundseths' 1995 Assessment Notice indicates that the home is taxed as personal property.

The District Court held that the first sentence of Paragraph 5 of the covenants is ambiguous due to the absence of essential words. The court further held that the last sentence of the provision is ambiguous since it is unclear whether that sentence "restricts only mobile homes that are temporary dwellings or all mobile homes, including those placed on cement blocks, permanently hooked up to utilities and sanitary facilities, and exhibiting the proper siding." We determine that the court's determination of ambiguity is based upon a distinction without a difference in light of our decision in Newman v. Wittmer (Mont. 1996), 917 P.2d 926, 53 St.Rep. 516. Newman involved a covenant which read as follows:

4. Trailers, Mobile Homes, Basement Homes and Temporary Structures. No structure of a temporary character, including but not limited to trailers, mobile homes, basements, tents, shacks, garages, barns or other out-bildings [sic] shall be used upon any lot or portion thereof at any time as a permanent residence. . . .

Newman, 917 P.2d at 929. In Newman, the Wittmers argued that the above covenant prohibited structures of a "temporary" nature, not permanent mobile homes and, alternatively, that their home was not a mobile home.

Initially, we held that the covenant was not ambiguous; that it expressly prohibited use of mobile homes as permanent residences. Newman, 917 P.2d at 929. As to whether their home was a "mobile home," we held that it was, despite the fact that Wittmers' mobile home was bolted to a concrete pad with skirting. In light of its dimensions, transportability and its DMV designation as a trailer and tax assessment designation as personal property, the home fit within numerous statutory definitions of "mobile home." Newman, 917 P.2d at 930. Additionally, the home fit within our case law definition of a mobile home, citing, inter alia, Timmerman v. Gabriel (1970), 155 Mont. 294, 470 P.2d 528, in which we held that the fact that a trailer was placed on a foundation and connected to utilities did not transform it to a permanent residence within the meaning of a prohibitive covenant; that the nature of the construction of the home was determinative. Newman, 917 P.2d at 931.

Here, the last sentence of the covenant in question provides that "[n]o mobile homes or temporary dwellings may be used as the sole dwelling on any tract after July 1, 1977." This covenant, like the covenant in Newman, does not lend itself to a distinction between mobile homes which are used as temporary dwellings as opposed to mobile homes which are set on cement blocks with siding and used as permanent homes. Rather, given the broad definition of mobile home in Newman, the covenant unambiguously prohibits all mobile homes as permanent residences. Accordingly, we reverse the District Court judgment as to Sundseths and remand for entry of judgment in favor of the Toavses with regard to the Sundseths' property.

### The Sayre/Sipes Home

We held above that the last sentence of Paragraph 5 of the covenant is not ambiguous; that it clearly proscribes mobile homes and thus the Toavses' motion for summary judgment must be granted as against Sundseths. However, the Sayre/Sipes guest home is another matter. Even though the last sentence clearly says "[n]o mobile homes . . . may be used," the covenant, when read as a whole, contains two caveats which inure to the benefit of Sayre/Sipes.

First of all, the initial sentence of Paragraph 5 of the covenant states:

No tent, trailer or other temporary shelter [missing words] for dwelling purposes nor shall any basement or garage be so used unless and until there is a completed private single family dwelling used in connection therewith.

The District Court was correct in concluding that this opening sentence, from which words were obviously omitted, is ambiguous. Despite any ambiguities, it is clear that the author was attempting to draft some sort of prohibition on use of temporary dwellings. Whatever may have been intended by the prohibition, it is readily apparent that it would not apply if the dwelling were used in conjunction with a completed single family dwelling.

In light of the qualifying language, it is apparent that a trailer or mobile home is allowed after a single family dwelling has been built on the property.

Sayre/Sipes' position is further buttressed by the last sentence of Paragraph 5 of the covenant which states: "No mobile homes or temporary dwellings may be used as the sole dwelling on any tract after July 1, 1977." The District Court concluded that this sentence was ambiguous as to whether it restricted use of mobile homes as temporary dwellings or restricted use of all mobile homes, including those placed on cement blocks with proper siding. That ambiguity, however, is immaterial to the Sayre/Sipes situation. Again, the sentence in question contains qualifying

language: "No mobile homes or temporary dwellings may be used as the sole dwelling on any tract after July 1, 1977." The sentence clearly contemplates that a mobile home is permissible so long as it is used in addition to a main residence. Sayre/Sipes were not using the mobile home as the "sole dwelling." Rather it was being used as a guest house in conjunction with their main residence. Accordingly, although we affirm the District Court's granting of summary judgement for Sayre/Sipes, we do so, not because of ambiguity, but because Sayre/Sipesþ guest home falls within the permissive implication of the last sentence of Paragraph 5 of the restrictive covenants.

Affirmed as to Sayre/Sipes and reversed as to the Sundseths.


/S/  W. WILLIAM LEAPHART


We concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER