JUSTICE NELSON
dissents.
¶33 I dissent from the Court’s decision as to Issue 1, and would therefore not reach Issue 2 or 3.1 would reverse.
¶34 As the majority acknowledges, we stated in Higdem v. Whitham (1975), 167 Mont. 201, 208-09, 536 P.2d 1185, 1189, that restrictive covenants should not be extended by implication or enlarged by con *86 struction and, in Jarrett v. Valley Park, Inc. (1996), 277 Mont. 333, 341, 922 P.2d 485, 489, that the district court could not “broaden” a covenant by adding that which was not contained therein. I respectfully suggest that the trial court and, now, this Court have done exactly that in the case at bar.
¶35 As noted, restrictive covenants are construed under the same rules as are other contracts. Newman v. Wittmer (1996), 277 Mont. 1, 6, 917 P.2d 926, 929. In that respect, it is well-settled that “[w]here the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written.” Carelli v. Hall (1996), 279 Mont. 202, 209, 926 P.2d 756, 761 (citing Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551). If the terms of the contract are clear, “there is nothing for the courts to interpret or construe” and the court must determine the intent of the parties from the wording of the contract alone. Wray v. State Compensation Ins. Fund (1994), 266 Mont. 219, 223, 879 P.2d 725, 727; Martin v. Community Gas & Oil Co. (1983), 205 Mont. 394, 398, 668 P.2d 243, 245. See also Toavs v. Sayre (1997), 281 Mont. 243, 245-46, 934 P.2d 165, 166-67. Accord Fox Farm Estates Landowners v. Kreisch (1997), 285 Mont. 264, 268-69, 947 P.2d 79, 82.
¶36 The covenant at issue states:
The covenants, conditions, restrictions and uses created and established herein may be waived, abandoned, terminated, modified, altered or changed as to the whole of the said real property or any portion thereof with the written consent of the owners of sixty-five percent (65%) of the votes from the real property described herein above. Each acre shall be entitled to one (1) vote in any election to decide any issues involving waiver, abandonment, termination, modification, alteration or change of restrictive covenants as to a whole of the real property or any portion thereof.
¶37 Applying all of the above-referenced interpretational rules to this restrictive covenant, I conclude that the plain and unambiguous language of the covenant limits the waiver, abandonment, termination, modification, alteration or changing of any covenant, condition, restriction and use to those “created and established” in the original declaration of restrictive covenants. There is simply no way to read the cited language in any other fashion without extending the language “by implication,” without enlarging the language “by construe *87 tion” and without “broadening” the covenant by adding that which is not contained therein.
¶38 It is undisputed that the original declaration of covenants at issue, as adopted in 1984, did not permit — by implication or directly — the creation of a homeowners’ association much less did this declaration allow such an association to assume financial responsibility for paving roads and to require reimbursement of those property owners who individually paid for paving the roads by those property owners who did not agree with the paving. The covenant language cited in ¶ 36 above, therefore, cannot be construed so as to allow the waiver, abandonment, termination, modification, alteration or changing of covenants and provisions which did not already exist in the declaration of restrictive covenants at its inception. Specifically, this language cannot be used to broaden, extend or enlarge the original covenants to allow for the creation of a homeowners’ association and to endow that association with various powers.
¶39 It is axiomatic that persons who purchase real property covered by restrictive covenants do so with the reasonable and justifiable expectation that the covenants will be enforced as written. As part of the purchase bargain they rightfully expect that such covenants will not be waived, abandoned, terminated, modified, altered or changed by other property owners except in strict compliance with the provisions of the declaration of covenants themselves or in accordance with supervening statutory law. To conclude otherwise simply means that the “contract” between the property purchaser and the developer or seller as represented by the declaration of covenants is composed of essentially unenforceable promises and obligations. It provides no protection whatsoever; it is worthless. Obviously, that is not the law of contracts, nor is it the law of covenants — as our own jurisprudence clearly reflects (Texas case law notwithstanding).
¶40 Here, we have allowed a super-majority of the property owners to abrogate the premises, promises and expectations clearly expressed in the declaration of covenants and upon which the appellants purchased their properties. I suggest that not only is our decision patently unfair to those litigants, but, as well, it is a departure from our prior case law strictly construing covenants to allow free use of property. See Newman, 277 Mont. at 6, 917 P.2d at 929. Worse, this case will open the door to allowing majority property *88 owners in a subdivision to violate restrictive covenants covering the subdivision and, concomitantly, to abridge the reasonable and justifiable expectations and rights of minority property owners whenever and for no other reason than that the majority determine that it is in its best interest to do so. I cannot agree.
¶41 I dissent.