No. 99-628

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 284N

KENNETH C. BELL and

ELIZABETH M. BELL,

Plaintiffs and Respondents,

v.

JERI YGNATOWIZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Eric Rasmusson, Boulder, Montana

For Respondent:

Maurice A. Maffei, Maffei Law Firm, Butte, Montana

Submitted on Briefs: July 20, 2000
Decided:

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Kenneth C. and Elizabeth M. Bell (collectively "Bells") brought this action in the Fifth Judicial District Court, Jefferson County, to enjoin Jeri Ygnatowiz (Ygnatowiz) from interfering with an easement and enforcement of a restrictive covenant against accumulation of vehicles upon Ygnatowiz's property. The District Court found for the Bells and Ygnatowiz now appeals to this Court. We affirm.

¶3 Ygnatowiz raises three issues on appeal:

1. Did the District Court err by holding that Ygnatowiz's gate interfered with the Bells' use of the easement?

2. Is the Bells' cause of action barred by laches?

3. Does substantial evidence exist that Ygnatowiz violated the restrictive covenants?

## FACTUAL BACKGROUND

¶4 All of the property involved in the underlying dispute originally belonged to the Bells. In 1971, however, the Bells as owners of E1/2, Section 21 T3N, R4W, M.P.M., Jefferson County, created a 12 tract subdivision. These ten acre tracts are numbered from west to east with 1 through 6 on the north boundary and 7 through 12 along the south boundary. There is property located between these two sets of tracts which belongs to the Bells. All of the tracts have been sold to third parties.

¶5 The subdivision and the deeds to the property are subject to certain restrictive covenants. These r estrictive covenants limit the use of the subdivision tracts to residential purposes. Commercial activity is restricted to only types that can be carried on within the confines of a private home or garage without making the residence secondary to the business. One of the restrictive covenants is a prohibition against the accumulation of junk automobiles. The declared purpose of these restrictions is to insure the property is used for residential purposes and to maintain the desired tone of the community. Further, anything tending to distract from the attractiveness and value of the subdivision will not be permitted.

¶6 The Bells also granted a thirty-foot wide easement which runs along the southern boundary of tracts 1 through 6. The declared purpose of this easement is to provide a means of ingress and egress to and from tracts 1 through 6. However, the Bells are not responsible for its construction, repair or maintenance. The easement connects to Whitetail Road, a county road, on its west end. The east end stops below tract 6. This easement runs over land still owned by the Bells.

¶7 Originally the Bells sold tracts 5 and 6 to Michael R. and Susan M. Ritari (collectively "Ritaris")in 1972. The Ritaris in turn sold tracts 5 and 6 to Ygnatowiz in 1974. Ygnatowiz testified that the Ritaris told her that the easement ended at tract 5. This testimony, however, conflicts with her other testimony that she believed the easement was for the benefit of the tract owners and if she sold tract 6 to someone she would remove the gate she had placed across the easement. Further, her deed contains a land description placing the easement south of her property line.

¶8 Ygnatowiz built a primitive gate across the easement four to five years after she bought the two tracts. This gate consisted of two wires stretching across the easement in line with the border of tracts 4 and 5. The Bells had previously fenced along the south side of the easement and this primitive gate attached to the Bells' fence line. Ygnatowiz strung these wires across the easement to corral a horse kept on her property.

¶9 Sometime later, Ygnatowiz installed a more substantial gate which she locked. Ygnatowiz testified that it was built in an attempt to deter vandalism of her property. The practical effect was that the gate prevented further use of the easement by either the Bells for access to their other property, or other present or prospective owners, for whom the easement was reserved.

¶10 The Bells, after notice to Ygnatowiz, unilaterally removed the gate. They sawed off the gate posts at ground level and piled the remains of the gate across Ygnatowiz's property line. Ygnatowiz responded by erecting a more substantial and permanent gate, made of well casings and cement. Ygnatowiz also blocked the right of way with a parked truck and trailer. This action followed.

¶11 On June 7, 1999, the District Court held a hearing on this matter. The District Court found that Ygnatowiz unlawfully interfered with the easement and she and her agents are hereby perpetually enjoined and restrained from further obstruction of the easement. Any existing obstructions, gates or other, were ordered immediately removed. It further found that the storage of cars, trucks or vehicles of any classification violates the subdivision's restrictive covenants. Ygnatowiz was given three months to remove the numerous vehicles stored on her property.

## STANDARD OF REVIEW

¶12 We review a district court's decision to grant an injunction for an abuse of discretion. Gabriel v. Wood (1993), 261 Mont. 170, 174, 862 P.2d 42, 44. Our standard of review for a district court's conclusions of law is whether its interpretations of law are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603. We review a district court's findings of fact to see if they are clearly erroneous. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287.

¶13 We utilize a three-step analysis in determining if a district court's findings of fact are clearly erroneous. First we determine whether the findings are supported by substantial evidence. Newman v. Wittmer (1996), 277 Mont. 1, 5, 917 P.2d 926, 929. If the findings are supported by substantial evidence, we next determine whether the district court has misapprehended the evidence. *Newman*, 277 Mont. at 5, 917 P.2d at 929. If both of these prongs are satisfied, we may still determine that a finding is clearly erroneous if, after a review of the record, we have a definite and firm conviction that a mistake has been committed. *Newman*, 277 Mont. at 5, 917 P.2d at 929.

## DISCUSSION

¶14 Ygnatowiz first argues the District Court erred in finding that her gate was a burden upon the easement and past decisions by this Court have held that the mere existence of a gate upon an easement is not, as a matter of law, a burden upon the easement. Ygnatowiz

further contends that this Court's past decisions clearly state that the owner of the dominant tenement may control an easement by installing a gate so long as the easement was used for the purpose it was created, and the gate is reasonable in light of the surrounding circumstances.

¶15 Second, Ygnatowiz argues that the Bells' cause of action is barred by the equitable doctrine of laches. The Bells sat on their rights for over twenty years without initiating removal of the gate or litigation. Therefore, laches should bar the Bells from advancing their claims for relief.

¶16 Third, Ygnatowiz argues that sufficient evidence does not exist to conclude she has placed junk vehicles or bodies of vehicles upon her property in violation of the restrictive covenants. She testified that they are not junk vehicles and some are collectable.

¶17 The Bells counter that the District Court did not commit any error by finding Ygnatowiz's gate was a burden upon the easement. The placement of the of the gate denied other lot owners the use of the road. From the record it appears that the protection Ygnatowiz desired from the gate would have been served had the gate been placed at the entrance to her property.

¶18 The Bells also argue that Ygnatowiz did not plead laches in the affirmative, nor did she raise the issue in a pleading at trial. Further, she made no showing of prejudice required for a claim of laches. Lastly, the Bells argue that substantial evidence does exist that Ygnatowiz's numerous vehicles violate the restrictive covenants.

¶19 We affirm the District Court on all three issues raised on appeal. First, Ygnatowiz had no right to commandeer the easement, which is not located upon her property, with a locked gate. Second, we decline to address laches because it was not properly pleaded in the District Court. Third, Kenneth Bell's testimony coupled with the photograph of the vehicles at issue supply substantial evidence in support of the District Court's finding that Ygnatowiz's numerous vehicles stored upon her property violate the restrictive covenants.

## ISSUE 1

¶20 **Did the District Court err by finding that Ygnatowiz's gate interfered with use of the easement?**

¶21 The pertinent language of the easement at issue here is as follows:

> Together with a common easement and right of way 30 feet in width for vehicular traffic along the South side of said tract . . . for the purpose of providing a means of ingress and egress to and from said property, but the sellers shall not be responsible for the construction, repairs or maintenance of such roadway.
>
> SUBJECT, HOWEVER, to such reservations and exceptions as may be contained in conveyances to the first parties, or their predecessors in interest, and further subject to such easements and rights of way as may appear of record over and across said premises.
>
> FURTHER SUBJECT to those certain restrictive covenants set forth in Addendum A. . . .

The District Court explained that, "[t]he easement in this case was created for the use or benefit of all subdivision owners, present and prospective, including the Bells. Neither has the right to obstruct or in any way interfere with its use." The District Court concluded that Ygnatowiz's locked gate unlawfully interfered with the Bells' right to enjoy the use of this reserved right of way.

¶22 Ygnatowiz argues that our decisions in Strahan v. Bush (1989), 237 Mont. 265, 773 P.2d 718, and Gabriel v. Wood (1993), 261 Mont. 170, 862 P.2d 42, provide adequate authority to support her position that her actions were reasonable in light of the situation of the property and the surrounding circumstances. Ygnatowiz contends that the circumstances surrounding her gate make it clear that she is not blocking access to any of her neighbors and the existence of the gate is reasonable. We disagree.

¶23 Ygnatowiz's reliance upon *Strahan* is misplaced. In *Strahan*, all the property owners had the ability to open the gate, only one of them suffered from a back condition which made opening the gate extremely difficult. Nonetheless, we held that the gate unreasonably interfered with the complaining party's reserved easement rights. *Strahan*, 237 Mont. at 269, 773 P.2d at 721(upholding a district court's permanent injunction ordering the defendants to refrain from interfering with the plaintiff's easement rights). Here, only Ygnatowiz has the ability to open her locked gate. This constitutes a far greater interference than the gate in *Strahan*.

¶24 Ygnatowiz also relies upon the *Gabriel* case. In that case we affirmed a district court's decision not to enjoin the use of a locked gate so long as the appellants continued to have reasonable access. *Gabriel*, 261 Mont. at 178, 862 P.2d at 47. If the gate was equipped with locks, appellants must be given keys or the combination to the lock, and the gate must be reasonably easy to open. *Gabriel*, 261 Mont. at 178, 862 P.2d at 47. The facts in that case are distinct from the facts here. Only Ygnatowiz was able to unlock her gate. Further, the easement at issue in *Gabriel* cut through the gating party's property. Here the easement is not over any of Ygnatowiz's property. Rather, it runs along the southern border of her property. Ygnatowiz could fence along her property line and place the gate at the entrance to her property, as opposed to across the easement, to keep trespassers out without interfering with the Bells' use of the easement. This was not an option in the *Gabriel* case.

¶25 Ygnatowiz's belief that she had the right to gate the easement seems to flow from her predecessor telling her that the easement ended at tract 5. We agree, however, with the District Court that what Ygnatowiz's predecessor told her does not make it so. The subdivision survey, entered into evidence as exhibit 1, clearly shows not only that the easement continues until it includes tract 6, it also shows that the easement runs south of Ygnatowiz's property line. Likewise, the easement land description contained in Ygnatowiz's deed places the easement south of her property line. Ygnatowiz is free to fence and place a locked gate along her own property line to keep trespassers out. This solution would not obstruct the Bells' right to use the easement. The District Court did not abuse its discretion on this issue in finding that the Ygnatowiz gate interfered with the use of the easement.

## ISSUE 2

¶26 **Is the Bells' cause of action barred by laches?**

¶27 Ygnatowiz argues that the Bells failed to assert any claims they may have had in the easement for 20 or more years, thus their cause of action should be barred by the equitable doctrine of laches. She cites Murray v. Countryman Creek Ranch (1992), 254 Mont. 432, 838 P.2d 431, in support of her argument. Ygnatowiz further argues that this issue was properly before the District Court.

¶28 The District Court explained, however, that the Bells' tolerance of the gate for 20 years does not create the equitable principle of laches, even if properly pleaded and

proven, which it was not. We agree with the District Court.

¶29 Laches is an affirmative defense, thus it must be set forth in the defendant's answer. Rule 8(c), M.R.Civ.P., provides: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . laches, . . . and any other matter constituting an avoidance or affirmative defense." A defense of laches, not raised in the answer, cannot be raised for the first time on appeal. Deist v. Wachholz (1984), 208 Mont. 207, 227, 678 P.2d 188, 198 (refusing to address laches argument).

¶30 Ygnatowiz's reply, that laches was before the District Court because it inquired at the hearing what the Bells' explanation was for not doing anything for 20 some years, is not compelling. Laches was not plead in any of Ygnatowiz's pleadings. Likewise, she made no motion in its regard at the hearing. The mere existence of testimony that might support a claim of laches is insufficient. Rather, Ygnatowiz was required to affirmatively set forth laches to the District Court in order to pursue it on appeal. Rule 8(c), M.R.Civ.P.

¶31 We need not inquire into the elements of laches and whether they were established, because this issue is not properly before us. We affirm the District Court on this issue.

## ISSUE 3

¶32 **Does substantial evidence exist that Ygnatowiz violated the restrictive covenants?**

¶33 Ygnatowiz argues that no evidence exists in the record that she is maintaining junk vehicles on her property in violation of the restrictive covenants. She points out that she does not charge a storage fee for the vehicles and the vehicles belong to her relatives. Ygnatowiz claims that because no evidence exists in the record that suggests she is engaged in any commercial activity involving the vehicles, she is not in violation of the restrictive covenants. We disagree.

¶34 The same rules of construction used for interpreting contracts apply to interpreting restrictive covenants. *Newman*, 277 Mont. at 6, 917 P.2d at 929. The restrictive covenants must be read as a whole to ascertain their meaning, rather than reading any one restrictive covenant in isolation. Gosnay v. Big Sky Owners Ass'n (1983), 205 Mont. 221, 227, 666 P.2d 1247, 1250. Where restrictive covenants' language is clear and explicit, that language governs our interpretation of the restrictive covenants as a whole. Toavs v. Sayre (1997), 281 Mont. 243, 245-46, 934 P.2d 165, 166-67. Restrictive covenants' language is

understood in its ordinary and popular sense. Section 28-3-501, MCA. Although restrictive covenants are strictly construed and ambiguities are construed to allow free property use, free property use is balanced against the rights of other interested property owners. Windemere Homeowners Ass'n, Inc. v. McCue, 1999 MT 292, ¶ 13, 297 Mont. 77, ¶ 13, 990 P.2d 769, ¶ 13.

¶35 The restrictive covenants at issue here read in pertinent part as follows:

> 1. The lands herein conveyed shall be used principally for residential purposes and any business activities shall be restricted to those types that can be carried on within the confines of a private home or garage without making the residence secondary to the business.

> . . .

> 7. . . . Nor shall said lands be used for any purposes which might or could create a nuisance. No junk automobiles, trucks or bodies therefrom shall be allowed to accumulate on said premises.

> . . .

> 9. The purpose of the foregoing restrictions, . . . are designed to insure the use of the property for residential purposes, to prevent nuisance, to prevent the impairment of the attractiveness of the property and to maintain the desired tone of the community and to secure to adjacent property owners the full benefit and enjoyment of their property. Anything tending to distract from the attractiveness and value of the property for residential purposes will not be allowed or permitted.

¶36 Although Ygnatowiz disputes that the vehicles stored on her property are junk or that they are part of a business, she does not dispute that they are stored upon her property. The District Court did not find that these vehicles were junk or part of a business. Rather, it found that, "[w]hatever the nature, the Court finds that vehicular storage of any kind violates the spirit of the restrictive covenants."

¶37 Vehicle storage is not expressly prohibited by the restrictive covenants. However, the restrictive covenants attempt to limit property use in this subdivision to residential purposes. Further, they contain expressed prohibitions against businesses that cannot be

confined within a garage or home, junk automobile accumulation, and anything tending to distract from the attractiveness of the residential property. We conclude that when the restrictive covenants are read together as a whole, Ygnatowiz's storage of numerous vehicles upon her tracts is in violation of the spirit of the restrictive covenants.

¶38 The record contains substantial evidence in support of this finding. The Bells testified that Ygnatowiz stored junk vehicles on her property and that this "used care lot" detracted from the value of the surrounding property. In support of this, they submitted a photograph of the vehicles located on Ygnatowiz's property. The District Court admitted the photograph into evidence during the hearing.

¶39 The photograph illustrates that a substantial number of vehicles were stored upon Ygnatowiz's property. Twenty plus vehicles appear to be stored on the property. These vehicles are of varying age, make, model, and condition. Some of these vehicles appear to be in pretty rough condition. Although Kenneth Bell testified that he did not know if the vehicles were capable of being operated, one could easily conclude from this photograph that some of the vehicles are not capable of running. From this evidence, the District Court could have found that this vehicle storage tended "to distract from the attractiveness and value of the property for residential purposes. . . ." This is in violation of the restrictive covenants.

¶40 Further, The District Court was in a better position to decide which side of the conflicting testimony to believe. Ygnatowiz has failed to meet her burden of establishing that the District Court's finding of fact is clearly erroneous on this issue.

¶41 The District Court is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER