No. 97-057

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

FOX FARM ESTATES LANDOWNERS
ASSOCIATION, a Montana non-profit corporation,

Plaintiff and Appellant,

v.

TROY L. KREISCH and DENISE A. KREISCH,

Defendants and Respondents.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy J. Wylder, Special Counsel, Patrick R. Watt;
Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana

For Respondents:

Gregory J. Hatley; Davis, Hatley, Haffeman & Tighe, Great Falls,
Montana

For Amicus:

Brenda R. Gilbert; Swandal, Douglass, Frazier & Gilbert, Livingston,
Montana (for Montana Manufactured Housing and RV Association)

Submitted on Briefs: July 23, 1997

Decided:   October 30, 1997
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Fox Farm Estates Landowners Association (Fox Farm), appeals from the decision of the Eighth Judicial District Court, Cascade County, denying Fox Farm's action to enjoin preliminarily and permanently Troy and Denise Kreisch's (Kreisches') installation of a manufactured home contrary to a restrictive covenant prohibiting temporary structures. We reverse and remand.

Fox Farm raises two issues on appeal. We conclude that the first issue is dispositive and, therefore, do not reach the second issue.

Issue Presented

Did the District Court err in holding that Kreisches' factory built "manufactured home" was not a mobile home prohibited by the applicable restrictive covenants?

Standard of Review

Fox Farm appeals only the District Court's conclusions of law. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Knudson v. McDunn (1995), 271 Mont. 61, 64, 894 P.2d 295, 297 (citing J.M., Jr. v. Montana High School Ass'n (1994), 265 Mont. 230, 235, 875 P.2d 1026, 1030).

Background

In 1996, the Kreisches purchased a lot in Ptarmigan Acres (the lot), a subdivision of Cascade County managed by Fox Farm. Ptarmigan Acres, including the Kreisches' lot, is subject to restrictive covenants which prohibit temporary structures including mobile homes. The Kreisches, fully aware of the restrictive covenants, purchased a manufactured home from a Great Falls mobile home dealer, The Home Place. They intended to install their new home on the lot.

The home consists of two mobile units, each with permanent steel chassis, and a special framing that allows for the installation of springs, axles, wheels, a tongue mechanism and other accessories associated with mobile homes which allow the units to be towed from one location to another. The Kreisches arranged to have the retailer haul the units to the lot and place them on a concrete foundation. The units would then be bolted and welded together pursuant to the manufacturer's suggestions. Electrical services would be installed with the meter on a utility pole, instead of on the home itself, because of the mobile quality of the home. Finally, upon completion of their purchase, the Department of Justice, Motor Vehicle Division would issue a Certificate of Ownership to the Kreisches.

Fox Farm, contending that the manufactured home violates the restrictive

covenants, filed for a Temporary Restraining Order (TRO) to enjoin the Kreisches from moving the home onto the lot. The District Court entered a TRO and held a hearing to show cause why a preliminary injunction should not be granted pending a full trial on the merits. Following the hearing, the District Court denied Fox Farm's prayer for preliminary injunction and dissolved the TRO concluding that the manufactured home was not a "mobile home" and, thus, did not violate the restrictive covenants. The District Court also held that Fox Farm failed to show that irreparable injury would result from its denial of the preliminary injunction.

## Discussion

In two recent decisions, Newman v. Wittmer (1996), 277 Mont. 1, 917 P.2d 926, and Toavs v. Sayre (Mont. 1997), 934 P.2d 165, 54 St.Rep. 155, this Court interpreted restrictive covenants similar to those presented in this case. The Kreisches contend, however, that the facts of this case are distinguishable from Newman and Toavs, but suggest that, if not distinguishable, this Court should reexamine those decisions. We recognize that with the increase in popularity of prefabricated and manufactured housing, the amount of litigation regarding such structures has also increased and that there is a split of authority among courts. See, e.g., Starr v. Thompson (N.C. App. 1989), 385 S.E.2d 535 (holding that whether a dwelling is a mobile home under a covenant depends on its characteristics and a factory built dwelling, designed and constructed to travel on wheels from place to place is a "mobile home"); Albert v. Orwige (Tenn. App. 1987), 731 S.W.2d 63 (holding that a structure was a "mobile home" notwithstanding that it might be a "double-wide" mobile home and notwithstanding the fact that it may be constructed of different materials than many mobile homes); Atkins v. Fine (Tex. App. 1974), 508 S.W.2d 131 (focusing on a ready built home's "conventional construction," the court held that a mobile home violated a restrictive covenant providing that "no buildings . . . are to be moved onto said property . . . except new ready built homes); Parry v. Hewitt (Wash. Ct. App. 1992), 847 P.2d 483 (finding that the mobile home is of the same quality and size as stick built homes and is therefore not prohibited by restrictive covenants prohibiting structures of a temporary character). However, we reaffirm our decisions in Newman and Toavs and determine that those decisions control the resolution of this appeal.

An applicant seeking a preliminary injunction for a violation of a restrictive covenant must "establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." Porter v. K & S Partnership (1981), 192 Mont. 175, 181, 627 P.2d 836, 839. Additionally, in determining whether an applicant has established a prima facie case, "the court should decide merely whether a sufficient case has been made out to warrant the preservation of the property or rights in status quo until trial, without expressing a final opinion as to

such rights. An applicant need not make out such a case as would entitle him to final judgment on the merits." Porter, 627 P.2d at 840.

This Court interprets restrictive covenants by looking first to the language of the covenant to ascertain its meaning. If the language is clear and explicit, the language will govern. The language of restrictive covenants should be understood in its ordinary and popular sense. Toavs, 934 P.2d at 166-67. Restrictive covenants should be strictly construed and ambiguities resolved to allow free use of the property. Newman, 917 P.2d at 929. However, such free use must be balanced against the rights of other purchasers. Newman, 917 P.2d at 929. Generally, restrictive covenants are considered valid if they maintain or enhance the character of the subdivision. Newman, 917 P.2d at 929.

The relevant portions of the restrictive covenants at issue in this case state:

I. Statements of Purpose and Application. The purpose of the following covenants and provisions is to insure the use of the real property herein described for attractive and comfortable suburban residential community for dwellings and local business of conventional construction, and to assure its occupants a quality environment. . . .

. . . .

IV. Use Restrictions.

. . . .

6. Temporary Structures, Trailers Forbidden. No structure of a temporary character, mobile home, trailer, basement, tent, shack, garage, barn or any other out building shall be used on any Block at any time as a residence, either temporarily or permanently. All structures must be of new materials . . . .

The restrictive covenants pertaining to Kreisches' lot are nearly identical to those at issue in Newman and have the same purpose: Prohibiting temporary structures such as mobile homes.

The Kreisches contend that Ptarmigan Acres' restrictive covenants are ambiguous and should be resolved to allow free use of the property. However, in Newman, 917 P.2d at 930, we determined that the restrictive covenants, nearly identical to Ptarmigan Acres' restrictive covenants, were not ambiguous but, rather, could be understood in their ordinary and popular sense. In order to define covenant terms that were used, but not defined in the restrictive covenants, we looked to statutory definitions for guidance, namely õõ 15-1-101(k) [now (l)] and 15-24-201(3), MCA, regarding taxation of mobile homes, and õ 61-1-501, MCA, regarding the classification of mobile homes as motor vehicles. See Newman, 917 P.2d at 930-32. Those same definitions can be applied when interpreting the terms in Ptarmigan Acres' restrictive covenants.

The District Court, however, relied on an additional statute that had not been

mentioned in our previous decisions: õ 76-2-202, MCA. This section of the code is found in the county zoning portion of Montana Code Annotated and states:

(6) As used in this section, "manufactured housing" means a single-family dwelling, built offsite in a factory on or after January 1, 1990, that is placed on a permanent foundation, is at least 1,000 square feet in size, has a pitched roof and siding and roofing materials that are customarily, as defined by local regulations, used on site-built homes, and is in compliance with the applicable prevailing standards of the United States department of housing and urban development at the time of its production. A manufactured home does not include a mobile home, as defined in 61-4-309, or a housetrailer, as defined in 61-1-501.

Section 76-2-202(6), MCA (1995). The District Court, relying on this code section and considering factual differences (Kreisches' home will be placed on a permanent foundation and thus classified for tax purposes as an improvement to real property), concluded that the Kreisches' manufactured home was not a mobile home in the ordinary and popular sense. We hold that the District Court misinterpreted the law in making that conclusion.

As we stated in Newman, "we are not applying one part of the code to a different part of the code. Rather, . . . we look to all the statutory definitions of mobile home for guidance in interpreting the popular and ordinary meaning of mobile homes in the restrictive covenant." Newman, 917 P.2d at 931 (citations omitted). Thus, õ 76-2-202, MCA, which pertains to zoning, is not determinative of the ordinary and popular meaning of manufactured home but, rather, is simply just one more code section that guides our interpretation of the restrictive covenants. Moreover, the District Court failed to consider subsection (7) of õ 76-2-202, MCA, which states that "[n]othing contained in this section may be construed to limit conditions imposed in . . . existing covenants . . . ." The District Court misinterpreted the law by relying solely on the zoning definition of manufactured home to determine whether Kreisches' manufactured home was a temporary structure that violated the restrictive covenants.

In Newman, in addition to looking to statutory definitions for guidance, we noted certain characteristics that led the district court to conclude that the Wittmers' manufactured home was a mobile home, including:

[T]he Wittmers completed a "Mobile/Manufactured Home Movement Declaration" before moving their home; the home is described as a "Manufactured Home by Fleetwood;" the home was issued a Montana Motor Vehicle Certificate of Title number and a vehicle identification number; the home is listed as a "trailer" on the Certificate of Title; the home was brought to the lot in two separate units and then joined together; the home has its own steel frame undercarriage and uses axles and wheels for the purpose of transport; the home has metal joists; the home is taxed as personal property; the home is not set on a permanent foundation; and

the home is designed to be moved from one place to another by "independent power connected thereto." Newman, 917 P.2d at 930. Likewise, the Kreisches' home was built at the Friendship Homes' factory in Minnesota where it was divided into two units each of which was equipped with appropriate accessories, such as axles and wheels, for hauling it across public highways. The characteristics of the Kreisches' home are nearly identical to those reviewed in Newman.

The Kreisches, however, argue that their manufactured home can be factually distinguished from the homes in Newman and Toavs because 1) it is being placed on a permanent foundation, and 2) it will be taxed as real property. We disagree. The type of foundation and tax classification were only two of many characteristics this Court considered in determining that the manufactured home in Newman was a mobile home prohibited by the restrictive covenants. Newman, 917 P.2d at 930. In fact, it is the placing of the Kreisches' home on a permanent foundation, rather than cement blocks, that leads to its taxation as real rather than personal property. Therefore, the two factual distinctions are interrelated.

We follow the reasoning in Timmerman v. Gabriel (1970), 155 Mont. 294, 470 P.2d 528, where this Court held that "the fact that the trailer was placed on a foundation and connected to utilities [did not] transform it to a permanent residence within the meaning of the covenant. We held that the restrictive covenant prohibited a type of structure and that the nature of the construction of the home rather than its subsequent mobility was determinative." Newman, 917 P.2d at 931 (citing Timmerman, 470 P.2d at 530). We conclude, as we did in Timmerman and reaffirmed in Newman, that the Kreisches' manufactured home cannot be transformed from temporary to permanent simply because it is placed on a foundation. See Newman, 917 P.2d at 931 (citing Timmerman, 470 P.2d at 530). Furthermore, a tax classification as real property does not change the physical characteristics of the home; i.e., that it was constructed off site and designed to be transported.

Finally, Article I of Ptarmigan Acres' restrictive covenants states the purpose of the covenants is to assure its occupants a quality environment by limiting the suburban residential community to dwellings of conventional construction, thus, focusing on the method of construction. The District Court found the term "conventional construction" to be an ambiguous term and resolved the ambiguity in favor of the free use of the property.

The restrictive covenants do not define "conventional construction." Relying on the Federal Housing Administration expert who testified at the hearing, Fox Farm argues that "conventional construction" means on-site construction using the "stick by stick" method of construction. The Kreisches contend that their home was built using

"conventional construction" methods including a shingled roof, wood siding, and wall framing using 2 x 6 dimensional lumber.  In addition, the Kreisches claim that once their home is placed on the foundation, it will be no more mobile than stick built homes.  However, the Kreisches concede that their particular home was manufactured at an assembly plant in Minnesota and was transported by truck in two pieces to the mobile home dealer.  They also admit that the home contains a steel frame and an I-beam for additional support and to allow installation of springs, axles, wheels and a tongue mechanism for towing.  In other words, although the Kreisches' home may contain some conventional materials, it was constructed off site and designed to be transported on the highway to the residential site.  We interpret the term "conventional construction" in its ordinary and popular sense and hold that such construction does not include structures that are manufactured and assembled at one site and designed to be transported to another site.  Therefore, we hold that the District Court erred in holding that Kreisches' factory built "manufactured home" was not a mobile home prohibited by the applicable restrictive covenants.

We reverse and remand with instructions to the District Court to issue injunctive relief consistent with this opinion.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER

Chief Justice J.A. Turnage, dissenting.

By construing ambiguous restrictive covenants broadly, the majority unnecessarily limits the Kreischesþ right to place affordable housing upon their property.  This derogates public policy and flies in the face of the rule of construction noted in Newman that ambiguities in a covenant should be strictly construed so as to allow free use of property.  I must respectfully dissent.

Unlike in Newman and Toavs, both of which opinions I signed, the manufactured home in the present case would be permanently attached to a foundation, with the result that it would be taxed as real property.  In Newman, the home at issue was attached to a concrete pad and fitted with skirting; in Toavs, the home was placed on cement

blocks.

Both were taxed as personal property. The contemplated permanent attachment to a foundation removes the Kreisches' manufactured home from the characterization as a "temporary structure"--the type of housing prohibited under the covenants. I therefore disagree with the majority that Newman and Toavs control.

The District Court concluded that the Kreisches' manufactured home satisfied the stated purpose of the Fox Farms restrictive covenants to "insure the use of the real property . . . for attractive and comfortable suburban residential community for dwellings . . . of conventional construction[.]" The court found that the Kreisches' home "basically, is built using conventional materials, methods, tools and equipment." The home has 2,100 square feet of living space. The court pointed out that the Kreisches' home has a shingled roof, wood siding, and is constructed with a fully insulated wall frame using 2x6 dimension lumber. The court reasoned that the only material difference between the Kreisches' home and allowable stick built homes was that the Kreisches' home was built elsewhere and moved onto its foundation rather than being built on top of the foundation. I agree.

At Article IV, USE RESTRICTIONS, Section 1, Residential Use, the Fox Farm covenants allow structures which are erected, "placed," or permitted upon the subject real property. No mention was made of similar language in the covenants at issue in Newman, Toavs, or Timmerman. Clearly, if one may place a structure on its foundation, it cannot be said that it was not contemplated that structures might be moved either in whole or in part to their homesite for the completion of final construction. If nothing else, the use of the word "placed" creates an ambiguity which must be resolved in favor of the Kreisches.

As the District Court correctly ruled, the plaintiffs have not established a prima facie case that the Kreisches' home would violate the covenants. I would affirm the decision of the District Court denying the request for a preliminary injunction.

/S/ J. A. TURNAGE


Justice Karla M. Gray and Justice William E. Hunt, Sr., concur in the dissent of Chief Justice Turnage.

/S/ KARLA M. GRAY
/S/ WILLIAM E. HUNT, SR.