No. 02-715

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 81

GENERALI - U.S. BRANCH,

Plaintiff and Respondent/Cross-Appellant,

v.

THOMAS ALEXANDER,
d/b/a PIONEER PLUMBING & HEATING,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DV 2001-385
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kathleen O'Rourke Mullins, O'Rourke Mullins Law Office, P.C.,
St. Ignatius, Montana

For Respondent:

William L. Crowley, Cynthia K. Thiel, Boon Karlberg P.C., Missoula,
Montana

Submitted on Briefs:  February 27, 2003

Decided:   March 31, 2004

Filed:

_____
                        Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1     Thomas Alexander (Alexander), doing business as Pioneer Plumbing and Heating, appeals the judgment of the Fourth Judicial District Court, Missoula County, granting summary judgment to Generali.

¶2     We address the following issues on appeal and affirm.

¶3     1.     Did the District Court err in finding that Generali did not have a duty to defend Alexander based on Alexander's general liability coverage?

¶4     2.     Did the District Court err in concluding that Alexander's general liability policy excluded coverage under the Products Completed Operations Hazard coverage he also carried?

¶5     3.     Did the District Court err in failing to find that Alexander's claims for fraud were not specifically excluded from his general liability coverage?

¶6     Generali raises the following issue on cross appeal, which we decline to address:

¶7     4.     Did the District Court correctly find that Alexander's complaint alleged property damage?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶8     Alexander was insured under a Commercial General Liability (CGL) policy issued by Generali from April 4, 1999, to April 4, 2000.  In addition to this policy, Alexander also carried a Products Completed Operations Hazard (PCOH) policy.  Each policy had separate limits.

¶9     The CGL policy stated, under Coverage A, that:  "We [Generali] will pay those sums that the insured [Alexander] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have

2

no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶10    Property damage under the CGL policy was defined as:

   (a)    Physical injury to tangible property, including all resulting loss of use
          of that property. All such loss of use shall be deemed to occur at the
                          time of the physical injury that caused it;
          or
   (b)    Loss of use of tangible property that is not physically injured. All such
          loss of use shall be deemed to occur at the time of the "occurrence" that
          caused it.

¶11    Although not delineated as a separate policy, the PCOH policy for which Alexander paid separate premiums, was separately defined as including:

   [A]ll "bodily injury" and "property damage" occurring away from premises
   you own or rent and arising out of "your product" or "your work" except:
          (2)    Work that has not yet been completed or abandoned.
          However, "your work" will be deemed completed at the earliest
          of the following times:
                  (a)    When all of the work called for in your
                         contract has been completed.
                  (c)    When that part of the work done at a job
                         site has been put to its intended use by any
                         person or organization other than another
                         contractor or subcontractor working on the
                         same project.
          Work that may need service, maintenance, correction, repair or
          replacement, but which is otherwise complete, will be treated as
          completed.

¶12    Kenneth J. Hansen and Nancy C. Hansen (the Hansens) sought a proposal from Alexander for plumbing work on heating the hot pools in their building addition at the Lolo Hot Springs Motel. In their complaint against Alexander, the Hansens alleged in pertinent part that Alexander failed to provide a plumbing and heating system that would perform as

3

he represented.

¶13 Under the terms of his CGL policy, Alexander submitted a claim to Generali, requesting Generali to defend and indemnify against the Hansens' complaint. Generali then filed a motion for summary judgment.

¶14 The District Court found that although the Hansens had suffered physical property damage, the exclusions under Alexander's CGL policy did defeat applicable coverage. Hence, Generali had no duty to defend Alexander. In its findings, the District Court did not rule on the coverage applicable to the Hansens' claim of fraud.

¶15 Alexander now appeals the District Court's judgment.

¶16 Additional facts will be discussed as they become applicable in the following analysis.

## STANDARD OF REVIEW

¶17 We review a district court's grant or denial of a motion for summary judgment *de novo*. *Cole ex rel. Cole Revocable Trust v. Cole*, 2003 MT 229, ¶ 8, 317 Mont. 197, ¶ 8, 75 P.3d 1280, ¶ 8. The movant must prove that no genuine issues of material fact exist. Once the movant demonstrates this, the burden shifts to the nonmoving party to prove that a genuine issue of material fact does exist. After a district court determines that no genuine issues of material fact exist, the district court must then determine whether the movant is entitled to judgment as a matter of law. *Cole*, ¶ 8. We review a district court's legal conclusions for correctness. *Cole*, ¶ 8.

## DISCUSSION

**¶18    1.    Did the District Court err in finding that Generali did not have a duty to defend Alexander based on Alexander's general liability coverage?**

¶19    Alexander argues that although the Hansens did not allege "property damage" in their complaint, the Hansens advanced claims of property damage as those words are commonly understood and defined under Alexander's policy.  Specifically, Alexander argues that because the heating systems he installed are "integral to the real property as a whole and are alleged to function in such a way as to materially alter the building and render the building and pools unsafe for occupation,"--i.e., in their complaint, the Hansens claimed lost profits resulting from their inability to use the buildings and the hot pools because of inadequate heat and water--damage from the system's malfunction constitutes physical property damage.  Hence, the Hansens claimed lost profits "stem from the physical impairment to the real property, and thus, are covered under [Alexander's] [p]olicy."

¶20    Generali contends that the allegations in the Hansens' complaint do not "trigger" the coverage Alexander claims here, as the Hansens sought damages for lost profits.  As such, Generali had no duty to defend or indemnify Alexander because Alexander's policy coverage did not apply.  In addition, Generali contends that because it charged Alexander only one premium, which covered his entire policy, the damage to the Hansens' property from PCOH  comes within Coverage A of Alexander's CGL policy.  Further, Generali contends that unless  specifically excluded, the property damage alleged by the Hansens must have been caused by an "occurrence" which took place during the policy period.  Such occurrence, Generali contends, did not take place.

5

¶21   In determining whether coverage under an insurance policy exists, it becomes necessary first to examine whether the allegations contained within the complaint set forth facts that bring the event within the insurance policy provisions. *Graber v. State Farm Fire and Cas. Co.* (1990), 244 Mont. 265, 270, 797 P.2d 214, 217.

¶22   The Hansens alleged in their complaint specifically that:

> [A]s a result of Defendants [Alexander] failure and refusal to provide Plaintiffs [the Hansens] with a heating and plumbing system that could perform the functions Defendant Alexander represented and promised that it could do, which failure constitutes breach of contract, breach of the implied covenant of fitness for use, or both, all of the work performed by Defendants was rendered useless, and Plaintiffs have been damaged in the full amount of the sums paid by Plaintiffs to Defendants, which Plaintiffs allege to be at least $25,788.00.  Plaintiffs are entitled to a full refund of the sums paid to Defendants.

¶23   Alexander's CGL policy states that Generali is obligated to provide coverage "for those sums that the insured [Alexander] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."

¶24   Property damages is defined under the CGL policy as:

(a)   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b)   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

¶25   As the above-quoted complaint language shows, the Hansens allege that due to Alexander's breaches, they were "damage[d] in the full amount of the sums paid" by them to Alexander--an amount totaling $25,788. The Hansens seek compensation for these lost

6

payments and not for physical injury to their property, nor for loss of use of that property.

¶26    Therefore, we hold that Generali had no duty to defend nor a duty to indemnify Alexander under Alexander's CGL policy, as the Hansens did not seek compensation for property damage as that term was defined under the policy.

¶27    **2.    Did the District Court err in concluding that Alexander's general liability policy excluded coverage under the Products Completed Operations Hazard coverage he also carried?**

¶28    Alexander argues that because his PCOH policy carries its own limit and has its own definition, it operates as coverage for a separate risk not included in his CGL policy or in any CGL exclusion thereby.  As such, under the "reasonable expectations" doctrine, Alexander asserts that if Generali "purports to assume the risk of property for which [Alexander] could be held liable, through two separate policy limits of coverage, and then works to completely avoid the risk through exclusions, then the risk was not just limited, it was never assumed at all."  Hence, in effect, Alexander argues that he "paid premiums for a risk that was illusory."

¶29    Generali contends that the exclusions listed under Coverage A of Alexander's CGL policy precludes coverage, as PCOH "do not have their own Insuring Agreement and Exclusions."  In addition, Generali contends that the Hansens' complaint indicates that Alexander did not complete his work, thereby not bringing him within the definition of PCOH.

¶30    We have held that "[e]xpectations which are contrary to a clear exclusion from

7

coverage are not 'objectively reasonable,'" although the "reasonable expectations doctrine" does not apply in situations "where clear policy language excluded the coverage." *Wellcome v. Home Ins. Co.* (1993), 257 Mont. 354, 359, 849 P.2d 190, 194. We enforce the terms of an insurance policy as written. *Brabeck v. Employers Mut. Cas. Co.*, 2000 MT 373, ¶ 12, 303 Mont. 468, ¶ 12, 16 P.3d 355, ¶ 12.

¶31 Specifically, the Hansens' complaint states in pertinent part that: "Despite repeated requests by Plaintiffs that Defendants complete the project, and despite repeated promises by Defendant Alexander that he would do so, Defendants never completed the work agreed. . . ."

¶32 As PCOH is defined, work is completed and thereby triggers coverage under PCOH when: (1) all of the work contracted for is completed; or (2) part of the work completed has been put to its intended use, with the qualification that work which "may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

¶33 Here, the Hansens alleged in their complaint that Alexander never completed the work for which he was hired to do. Specifically, they alleged: (1) that "in a number of instances they were billed by Defendants for materials that were never installed, are of no use to Plaintiffs, and, in some cases, cannot be found;" (2) that "Defendant Alexander caused his company to bill Plaintiffs for labor not actually performed upon Plaintiffs' project;" and (3) that "[a]fter Defendants ceased working . . . Plaintiffs learned from a representative of Mountain Supply Company that the system which Defendant Alexander had 'sold' to

8

Plaintiffs was wholly inadequate for the purpose intended. . . ."

¶34    As we held in *Wellcome*, the reasonable expectations doctrine is not applicable where the policy language excludes such coverage.  Here, under the PCOH language, Alexander did not "otherwise complete" the work for which the Hansens hired him to do, as materials were never installed, labor was never performed, and the system that was installed was inadequate for the Hansens' intended purpose.

¶35    Therefore, regardless of reaching the question of whether PCOH constitutes its own policy, we hold that PCOH coverage is not applicable on the facts presented here.  Alexander did not complete his work, and hence did not trigger PCOH coverage.

¶36    **3.    Did the District Court err in failing to find that Alexander's claims for fraud were not specifically excluded from his general liability coverage?**

¶37    Alexander argues that the CGL policy coverage did not "specifically exclude the fraudulent actions of Alexander as alleged in [the Hansens'] complaint."  He argues that the page of the policy explaining the fraud exclusion did not include a listing of the CGL, as did other policy endorsements, namely the asbestos exclusion and the lead exclusion.

¶38    Generali contends that, as the District Court found, "the acts or omissions complained of by [the] Hansens were excluded by the [CGL] policy."  As such, "without a covered 'occurrence' or 'property damage,' no coverage existed. . . ."  In addition, Generali argues that the first page of the CGL policy "clearly and unequivocally" includes a section stating that Generali will not pay for loss in a case of fraud.

¶39    We have held that we interpret "an insurance policy's terms according to their usual,

9

common sense meaning as viewed by a reasonable insured." *Brabeck*, ¶ 12. In addition, we "interpret any doubts in coverage strictly against the insurer," but we do not engage in this interpretation "where the policy's terms are not ambiguous," as we will not rewrite the terms of a policy, and will instead enforce the terms as written. *Brabeck*, ¶ 12.

¶40 Here, the CGL policy states on the first page, "Forms applicable to all Coverage Parts." This section contains endorsements which the policy does not cover. One such endorsement is entitled "Montana Changes - Concealment, Misrepresentation or Fraud," and states the following:

> We [Generali] will not pay for loss ("loss") or damage in a case of:
> 1.    Concealment or misrepresentation of a material fact; or
> 2.    Fraud
> committed by you or any other insured ("insured"), whether before or after the
> loss ("loss") and relating to coverage of the loss ("loss") under this policy.

¶41 We conclude that the District Court's ultimate conclusion that the acts and omissions complained of by the Hansens were excluded by the CGL policy is correct, as both the policy language and the exclusions contained therein are clear and explicit.

¶42 **4.    Did the District Court correctly find that Alexander's complaint alleged property damage?**

¶43 Because we hold that the District Court did not err in granting summary judgment to Generali, we do not address Generali's cross appeal here.

¶44 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice concurring.

¶45 I concur with the Court on all issues but would resolve Issue 1 under the rationale set forth by the District Court.

¶46 Hansens' complaint alleged that "all of the work performed by [Alexander] was rendered useless" because of Alexander's faulty installation of the plumbing system. Section V(15) of the CGL policy broadly defines "property damage" to include "[l]oss of use of tangible property that is not physically injured." I would conclude that Hansens' claim fell within this definition. However, though qualifying under that definition, the claim was nonetheless removed from coverage under Section I, Coverage A(2)(m), which provides that "insurance does not apply to":

> **Damage to Impaired Property or Property Not Physically Injured**
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

12

The policy here narrowed the coverage for "property damage" involving property not physically impaired by excluding coverages for alleged defective conditions in Alexander's work product and for any alleged failure by Alexander to perform as agreed in regard to such property. These definitions include Hansens' claim in regard to the plumbing system.

¶47　　I concur in affirming the District Court.

/S/ JIM RICE