No. 03-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 245

GRASSY MOUNTAIN RANCH OWNERS' ASSOCIATION,
a Montana nonprofit corporation,

Plaintiff and Respondent,

v.

RON GAGNON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Meagher, Cause No. DV-01-11,
The Honorable Randal I. Spaulding, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark D. Parker, Shawn P. Cosgrove, Parker Law Firm, Billings, Montana

For Respondent:

David N. Hull, Attorney at Law, Helena, Montana

Submitted on Briefs:  January 6, 2004

Decided:  September 8, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Grassy Mountain Ranch Owners' Association (GMROA) filed a complaint against Ron Gagnon (Gagnon) in Montana's Fourteenth Judicial District Court, Meagher County, for violating a restrictive covenant by placing a manufactured home on his lot. On cross motions for summary judgment, the District Court granted summary judgment in favor of GMROA. Gagnon appeals. We reverse.

¶2 The sole issue on appeal is whether the District Court erred when it granted GMROA's motion for summary judgment and denied Gagnon's motion for summary judgment.

BACKGROUND

¶3 Gagnon owns Lot 115 of the Grassy Mountain Ranch-Phase II Subdivision in Meagher County. Gagnon purchased a Marlette Manufactured Home and placed it on a permanent foundation on his lot. The parties agree that the home is "manufactured housing" as defined by § 76-2-202(6), MCA.

¶4 GMROA brought a cause of action against Gagnon alleging his placement of the home on the lot violates the restrictive covenants pertaining to the subdivision. Specifically, GMROA argues that manufactured homes are not permitted in the subdivision. Two provisions of the covenants are relevant to the present case. The first provision, which defines "mobile home," reads:

> A detached residential dwelling unit manufactured at a factory, is not in accordance with the standards of the Uniform Building Code, and is designed for transportation on its own chassis to a building site for occupation as a dwelling with or without a permanent foundation.

2

The second provision is Covenant 5.14, which provides, in relevant part:

> Except as provided in 5.14.1, no trailers, mobile homes, or other movable living conveniences shall be lived in upon the property. The restriction does not prevent pre-built homes on permanent foundations that meet United States Federal Housing Specifications as non-mobile, permanent residential homes.

¶5 Gagnon had both constructive and actual notice of the covenants when he purchased Lot 115. He also was warned in writing by a representative of GMROA, prior to placing the manufactured home on his lot, that its placement would violate Section 5.14 of the covenants and that GMROA would enforce the covenants.

¶6 Gagnon and GMROA filed cross motions for summary judgment. The District Court granted GMROA's motion and denied Gagnon's. Gagnon appeals.

## STANDARD OF REVIEW

¶7 Our review of a district court's grant or denial of a motion for summary judgment is de novo. *Associated Press v. Crofts,* 2004 MT 120, ¶ 11, 321 Mont. 193, ¶ 11, 89 P.3d 971, ¶ 11. Our standard of review for a question of law is plenary. *Collection Bureau Servs. v. Morrow,* 2004 MT 84, ¶ 6, 320 Mont. 478, ¶ 6, 87 P.3d 1024, ¶ 6. We review a district court's legal conclusions for correctness. *Generali v. Alexander,* 2004 MT 81, ¶ 17, 320 Mont. 450, ¶ 17, 87 P.3d 1000, ¶ 17. Where all of the facts bearing on the resolution of legal issues are before this Court, we have the authority to reverse the trial court's grant of summary judgment and direct it to enter summary judgment in favor of the other party. *Royal Ins. Co. v. Roadarmel,* 2000 MT 259, ¶ 51, 301 Mont. 508, ¶ 51, 11 P.3d 105, ¶ 51.

## DISCUSSION

¶8 Did the District Court err when it granted GMROA's motion for summary judgment

and denied Gagnon's motion for summary judgment?

¶9 Gagnon advances three arguments on appeal. First he argues that the covenant at issue specifically allows for a manufactured home if it meets certain specifications. Second, he argues in the alternative that the covenant at issue is ambiguous and should therefore be interpreted to allow free use of the property. Third, he argues that GMROA waived its right to enforce the covenant against Gagnon. Because we find that the covenants clearly allow for Gagnon's manufactured home, we need not address his other arguments.

¶10 In *Fox Farm Estates Landowners v. Kreisch* (1997), 285 Mont. 264, 947 P.2d 79, we stated:

> This Court interprets restrictive covenants by looking first to the language of the covenant to ascertain its meaning. If the language is clear and explicit, the language will govern. The language of restrictive covenants should be understood in its ordinary and popular sense. Restrictive covenants should be strictly construed and ambiguities resolved to allow free use of the property. However, such free use must be balanced against the rights of other purchasers. Generally, restrictive covenants are considered valid if they maintain or enhance the character of the subdivision.

*Fox Farm Estates*, 285 Mont. at 268-69, 947 P.2d at 82 (citations omitted).

¶11 The District Court found that Gagnon's home was a mobile home within the definition provided in the covenants, and cannot be considered a non-mobile, permanent, residential home as contemplated by the second sentence of Section 5.14. We disagree. Gagnon acknowledges that under Montana law, a "manufactured home" is a "mobile home." *See Fox Farm*, 285 Mont. at 270-272, 947 P.2d at 83-84. Gagnon concedes that if Section 5.14 had ended after the first sentence which specifically excludes "mobile homes," he would be in violation of the covenants. However, the second sentence of Section 5.14 makes it clear that

4

a manufactured home or other pre-built home placed on a permanent foundation is not to be excluded if it meets the United States Federal Housing Specifications. If the intent of the drafters was to prohibit manufactured homes, including manufactured homes placed on permanent foundations in compliance with federal standards, then there would have been no need to have included the second sentence of Section 5.14.

¶12 GMROA argues that under *Fox Farm*, Gagnon's manufactured home violates the covenants. In concluding that the manufactured home at issue in *Fox Farm* was a mobile home, we considered that the home was described as a manufactured home by the dealer, that the home was issued a Montana Motor Vehicle Certificate of Title number and a vehicle identification number, that it was brought to the lot in two separate units and then joined together and that it had its own steel frame undercarriage and used axles and wheels for the purpose of transport. *Fox Farm*, 285 Mont. at 270-71, 947 P.2d at 83. GMROA points out that those same factors are present in this case. However, *Fox Farm* is distinguishable not because of the type of home, but because of the covenants. The covenant in *Fox Farm* expressly forbade mobile homes, but did not include a provision allowing for certain pre-built homes on permanent foundations as does Section 5.14 here.

¶13 Interpreting the covenant to prohibit Gagnon's manufactured home would render the second sentence meaningless. We hold that Section 5.14 of GMROA's covenants allow for a manufactured home on permanent foundations that meet United States Federal Housing Specifications as non-mobile, permanent residential homes. We reverse the District Court and remand with instructions to enter summary judgment in favor of Gagnon.

5

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶14    I dissent.  Gagnon conceded that his home was a "mobile home."  Covenant 5.14 therefore applies to ban its placement on the lot.  The second sentence of this provision excepts from the Covenant's application pre-built homes on permanent foundations that meet U.S. Federal Housing Specifications "as *non-mobile* permanent residential homes." (Emphasis added).  Given his admission, Gagnon's home simply does not qualify as a *non-mobile* home.  In my judgment, that should be the end of the inquiry.  I would therefore affirm the entry of summary judgment in favor of GMROA.


                                                            /S/ PATRICIA O. COTTER


Justice John Warner joins in the dissent of Justice Patricia O. Cotter.


                                                            /S/ JOHN WARNER