FILED

May 10 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0563

DA 15-0563

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 108N

BARBARA FINK,

        Plaintiff and Appellant,

        v.

MEADOW LAKE ESTATES HOMEOWNERS' ASSOCIATION,
MEADOW LAKE ESTATES HOMEOWNERS' ASSOCIATION
GOVERNING BOARD and WAYNE KELLY, an individual,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                    In and For the County of Ravalli, Cause No. DV 14-423
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Barbara Fink, self-represented, Hamilton, Montana

        For Appellee:

            Martin S. King, Worden Thane P.C., Missoula, Montana

                        Submitted on Briefs:  March 16, 2016

                                Decided:  May 10, 2016

Filed:

                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Barbara Fink (Fink), pro se, appeals from two orders entered by the Twenty-First Judicial District Court, Ravalli County, one granting summary judgment to the Defendants/Appellees (the Board), and the other awarding attorney fees to the Board. We affirm.

¶3 This case involves a residential development known as Meadow Lake Estates, located in Hamilton. The lots within the Meadow Lake Estates are subject to the Meadow Lake Estates Deed of Restriction (the Covenants). Pursuant to the Covenants, the Meadow Lake Estates Homeowners' Association (HOA) was created, and all lot owners are members of the organization. The Covenants provide for a governing board of five members of the HOA to "prescribe rules and regulations" regarding the use and maintenance of the Meadow Lake Estates. Wayne Kelly, the individually named Defendant, sat on the Board for a period of time during which Fink alleges injury. Since 2003, the HOA has collected a $175 annual assessment on a flat per-lot basis to be used for road maintenance and other expenses associated with the development.

2

¶4 In 2001, Fink purchased Lot 24 in the Meadow Lake Estates. In 2007, Fink subdivided Lot 24 into two separate parcels, and in 2009 returned the two parcels back to their original configuration. In 2010, Fink again subdivided her lot into two separate parcels, identifying them as Parcels 24-A-1 and 24-B-1. After doing so, Fink transferred Parcel 24-A-1 to her father. Then, Fink's interest in Parcel 24-B-1, including her residence, was foreclosed upon and sold in 2012. In October 2013, Fink obtained a 1% interest in Parcel 24-A-1, with her father retaining a 99% interest in the property.

¶5 Fink initiated this action, alleging numerous claims against the Board, which the District Court summarized as follows: 1) failure to enforce easements per the Covenants; 2) failure to assess and collect road maintenance fees per the Covenants; 3) failure to maintain community roads per the Covenants; 4) failure to follow the Covenants' voting procedures and fractionalization of member votes; 5) failure to follow corporate procedures as required by Montana law; 6) failure to allow inspection of records; 7) failure to maintain accurate financial records regarding income and expenditures; 8) failure to provide required financial information to HOA members; 9) failure to disclose to HOA members the details of a settlement of a legal action in which HOA was a party; 10) failure to file annual state and federal tax returns; 11) defamatory statements made about Fink; and 12) violations of the Montana Consumer Protection Act. After some discovery, the Board moved for summary judgment. After a hearing, the District Court granted the Board's motion for summary judgment and the Board's motion for an award of costs and attorney fees. In awarding fees, the District Court found Fink's

"briefing and multitude of unsupported claims frivolous and meritless[,]" and determined that the Board was entitled to fees as a prevailing party under the Montana Consumer Protection Act. The District Court also held that the Board was entitled to fees because Fink had "unreasonably and vexatiously multiplied the proceedings by unsupported, contradictory claims[,]" and by her briefing, which exceeded the limits provided for in local rules.

¶6 We review the District Court's granting of summary judgment de novo. *See Grassy Mt. Ranch Owners' Ass'n v. Gagnon*, 2004 MT 245, ¶ 7, 323 Mont. 19, 98 P.3d 307.

¶7 Fink argues that summary judgment was improper because genuine issues of material fact existed, referencing the Board's misconduct, lack of performance, and failure to adhere to the Covenants. However, the facts underlying these issues, including the provisions of the Covenants and subsequent amendments, were not in dispute, and we see no material factual issues remaining, rather only questions of interpretation of the Covenants. "Restrictive covenants are construed under the same rules of construction as other contracts: courts read declarations of covenants on their four corners as a whole, and terms are construed in their ordinary or popular sense." *Bordas v. Va. City Ranches Ass'n*, 2004 MT 342, ¶ 24, 324 Mont. 263, 102 P.3d 1219 (citing *Windemere Homeowners Ass'n, Inc. v. McCue*, 1999 MT 292, ¶ 13, 297 Mont. 77, 990 P.2d 769).

¶8 Fink's argument that the District Court failed to address her numerous other claims regarding the HOA's practices is unavailing. While the District Court did not

provide a detailed discussion, the order mentions the wording of the Covenants. We conclude the District Court correctly determined that the Board's practices, despite Fink's disagreement with them, are permissible under the broad authority granted by the Covenants, entitling the Board to summary judgment on 1-4 of Fink's claims.

¶9 The District Court also concluded that many of Fink's "claims [under the Covenants] are barred by the tort and contract statute of limitations[,]" citing §§ 27-2-202(1), and 27-2-204, MCA. Section 27-2-202(1), MCA, reads in pertinent part: "The period prescribed for the commencement of an action upon any contract, obligation, or liability founded upon an instrument in writing is within 8 years." The District Court reasoned that, since 2003, Fink had been aware of the flat rate assessment, and had made numerous vocal challenges regarding the assessment, the HOA's legal status, the Board's authority, the procedures it employed to administer the Covenants, the Board's decisions regarding road maintenance and use of the roads, and voting procedures since that time. Despite making numerous informal complaints during this period, Fink had failed to bring legal claims against the HOA until now. Fink argues that the HOA's flat rate methodology did not harm her until 2013, "when the assessment began to exceed what she would owe pro rata," but she does not provide evidence demonstrating how the flat rate assessment is calculated in a manner that is financially injurious. The District Court properly concluded that, without greater specificity in Fink's pleadings, several of her claims regarding the enforcement of the Covenants are necessarily barred by the statute of limitations.

¶10 Fink argues that the District Court erred by dismissing her claims related to HOA's failure to meet non-profit corporate requirements. Section 35-2-214(1), MCA, provides that "the corporate existence begins when the articles of incorporation are filed by the secretary of state." The HOA has never filed such documentation, and as such, is not a corporation. Fink argues that the HOA should be subject to corporate standards because it has held itself out to be a nonprofit, but we do not find this bare assertion persuasive. The HOA operates on a nonprofit basis but remains an unincorporated association, and the District Court correctly concluded that Fink "failed to create a genuine issue of material fact that the . . . HOA is a corporation and could have violated rules relating to nonprofit corporations."

¶11 Fink argues that the District Court improperly granted summary judgment to the Board on her defamation claim. Fink video recorded a 2013 HOA meeting without asking permission of those present, an action that spurred a complaint to the Hamilton City Police Department, which investigated and sent a letter to Fink, Defendant/Appellee Wayne Kelly, and two other Board members on September 5, 2013. The letter stated that "[i]t is the determination of this office that there is insufficient probable cause to charge the offense of privacy in communications under [§] 45-8-213[, MCA,]" and indicated the Department would not pursue that matter further. The letter also stated that "[a]ny party who still feels aggrieved by the conduct . . . retains the right to . . . initiate a private civil lawsuit if they wish to pursue non-criminal legal remedies[,]" and noted "[t]he video surrendered to law enforcement as possible evidence or contraband is currently retained

6

in the custody of our office." In support of her claim, Fink points to a set of minutes that the Board mailed to HOA members on September 26, 2013, which reported:

> After the meeting was adjourned and members were halfway out the door[,] it was announced that Ms. Fink had illegally videotaped the meeting without anyone's permission. The Police Department has been notified and Ms. Fink has been visited by the Police and handed over the illegal tape. An investigation into this illegal act is ongoing.

Fink argues that, because the Board had received the letter from the Police Department declining to prosecute by the time the minutes of the meeting were circulated, the uses of the term "illegal" in the minutes are libelous because they imply she performed a criminal act and "are considered libel 'per se' because they falsely state Barbara Fink committed a crime."

¶12    "Libel is a false and unprivileged publication by writing, . . . that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Section 27-1-802, MCA. In order for defamatory words to be actionable, they "must be of such nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings." *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 45, 330 Mont. 48, 125 P.3d 1121 (brackets in original) (citing *Wainman v. Bowler*, 176 Mont. 91, 96, 576 P.2d 268, 271 (1978)).

7

¶13 The published statements accused Fink of acting "illegally," but did not state she had committed a crime, upon which she premises her claim. The Police Department's letter informed the Board of the possibility of a civil liability suit as a form of redress for the incident, and the Board may have interpreted Fink's actions as "illegal" on that basis. The statements did not necessarily imply Fink was committing a crime and, without more, are insufficient to support her libel claim. We conclude the District Court did not err in granting summary judgment on Fink's 11th claim, defamation.

¶14 Fink argues that the District Court erred by concluding that "Defendants have not conducted any consumer transactions with Plaintiff, rendering her claim under the Consumer Protection Act meritless." The Montana Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Section 30-14-103, MCA. The Act defines a "consumer" as "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Section 30-14-102(1), MCA. In her Complaint, Fink alleged that she "and other similarly situated HOA members purchased lots for personal, consumer-related purposes." However, the District Court properly concluded that Fink had failed to establish that the HOA had conducted any consumer transaction with Fink in relation to purchasing her lot. While Fink argues on appeal that she also purchases "road maintenance" services from the HOA, she failed to raise this claim in the District Court, and we decline to address the new issue on appeal. The District Court did not err in granting summary judgment against Fink's

8

claim under the Montana Consumer Protection Act, as she was not a "consumer" in relation to the HOA when purchasing her lot.

¶15 Finally, Fink argues the District Court erred by granting attorney fees to the Board. "This Court reviews for correctness a district court's conclusion regarding the existence of legal authority to award attorney fees. If legal authority exists, we review for an abuse of discretion a district court's order granting or denying attorney fees." *City of Helena v. Svee*, 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32 (citations omitted). The District Court found that the Board was entitled to attorney fees under § 30-14-133(3), MCA, for defending a claim under the Montana Consumer Protection Act, and under § 37-61-421, MCA, as a sanction for multiplying the proceedings in an unreasonable or vexatious manner. The District Court cited to Fink's "unsupported, contradictory claims and filings" as reason for awarding attorney fees and costs, and reasoned that the HOA had hired an attorney in 2003 to address issues that Fink raised then, noting that "most [of the same issues] are the complaints currently before the Court." We find no error of law or abuse of discretion in the District Court's order awarding attorney fees. *See Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 37, 327 Mont. 146, 112 P.3d 1018 ("When faced with a successful defendant, a district court should only award attorney fees [under the Act] 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'") (citation omitted).

¶16 The Board additionally requests attorney fees and costs for the appeal, citing the Covenants, which would allow a prevailing party to recover attorney fees and costs in an action to enforce them. However, the Board requested attorney fees in its Answer and Counterclaim based on Fink being a vexatious litigant, and pursuant to the Montana Consumer Protection Act in their motion for summary judgment. The District Court, in its Opinion and Order, cited to statutory criteria for awarding attorney fees and did not award them based on the Covenants. Although the language of the Covenants may entitle the Board to attorney fees, this was not the basis on which the Board sought attorney fees, nor the basis upon which they were granted by the District Court. In this circumstance, we have determined to affirm the District Court's Order Granting Attorney's Fees and Costs, but to decline to award fees and costs for this appeal.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's interpretation and application of the law were correct, and it did not abuse its discretion in any discretionary ruling.

¶18 Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ BETH BAKER

10