FILED

05/30/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0154

DA 22-0154

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 100

DEBRA ANN CHRISTIAN, as Personal Representative
of the ESTATE OF CLIFFORD CHRISTIAN,

      Plaintiff and Appellant,

  v.

UNITED FIRE AND CASUALTY COMPANY,

      Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. ADV-2018-1172
                 Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jack G. Connors, Jacqueline R. Papez, Doney Crowley P.C., Helena,
                Montana

        For Appellee:

                Katherine S. Huso, Ryan J. Gustafson, Matovich, Keller & Huso, P.C.,
                Billings, Montana

Submitted on Briefs:  February 22, 2023

Decided:  May 30, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Debra Ann Christian, Personal Representative of the Estate of Clifford Christian (Estate, or Christian for Clifford Christian individually), appeals the order of the First Judicial District Court, Lewis & Clark County, granting summary judgment to Appellee United Fire and Casualty Company (United Fire), concluding that Christian and/or his Estate were not owed a defense or indemnification for claims made against Christian in underlying litigation by Linda and Albert Parisian (Parisians). We consider the following issue:

> *Did the District Court err by concluding United Fire had no duty to defend because the Parisian claims against Christian fell outside the scope of coverage of the subject policy?*

¶2     We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In April 2016, Christian contracted with Weatherall Builders to serve as general contractor on his project to construct four townhomes in Helena, Montana. One of the homes was pre-sold to the Parisians, who had entered a Buy-Sell Agreement.[1] Weatherall contracted with Zachary Beveridge to landscape the homesites, including Parisians'. Beveridge claimed he was never paid for this work and, in 2017, sued Weatherall and Parisians to obtain payment. Christian was named as a third-party defendant in

---

[1] Parisians' Buy-Sell Agreement, entered on February 18, 2016, was amended several times thereafter, unrelated to the issue on appeal. The original Agreement and its iterations are referred to herein as the "Buy-Sell Agreement" or "Agreement."

Weatherall's Answer and Third-Party Complaint, which asserted contract payment claims,[2] and was also named as a third-party defendant by Parisians.

¶4 In their initial Answer and Third-Party Complaint against Christian, Parisians denied "that they are responsible for any alleged contractual damages owed by Mr. Christian." They alleged that:

> Pursuant to the Buy-Sell Agreement between the Parisians and Mr. Christian, Mr. Christian was required to complete, to the Parisians' satisfaction, items which included the work performed by Weatherall and/or [Beveridge]. . . . Mr. Christian was required to make any and all payments required for the real estate improvements performed on the property from his own funds and the Parisians fully performed their obligations under the Buy-Sell [Agreement]. *Any damages incurred by [Beveridge] in this action were solely due to Mr. Christian's negligence and/or his failure to perform his contractual obligations* which were owed to the Parisians and/or his subcontractual obligations owed to [Beveridge].

(Emphasis added.) Parisians contended that "[i]f and to the extent that the Parisians are determined to be liable to [Beveridge] under any theory or pursuant to any claim for damages in this action, Mr. Christian is liable to indemnify the Parisians," and claimed "compensatory damages against Mr. Christian." The Parisians did not seek any other substantive relief. Christian counterclaimed against Parisians, asserting they would be unjustly enriched if granted the requested relief, which Parisians denied in their Answer to the counterclaim.

---

[2] Weatherall claimed breach of contract, foreclosure of lien, and indemnification against Christian. Another contractor, Highridge Builders, LLC, who likewise claimed lack of payment, was also joined in the litigation. *See Zachary Beveridge d/b/a Northern Sprinklers and Landscaping v. John Cowie d/b/a Weatherall Builders and Linda and Albert Parisian*, *et al.*, Lewis and Clark County Cause No. BDV 2017-539 (underlying action).

¶5     A settlement was reached in the underlying action in July 2019, and the case dismissed, but not before Christian had sought defense and indemnification from United Fire for, at issue here, Parisians' claims against him.  United Fire had insured Weatherall with a liability policy (Policy) for the subject period.  During the period, Christian verbally requested to be named an additional insured on the Policy, and Weatherall requested a certificate of liability insurance (Certificate) from its insurance agent, Insurance Unlimited.  Insurance Unlimited issued the Certificate for the United Fire Policy, which stated: "Certificate holder [Christian] to be named as an additional insured with waiver of subrogation given [for] general liability (form CG 7151) as per written contract."[3]

¶6     The Policy is a commercial general liability policy that covered "bodily injury", "property damage", and "personal and advertising injury."  "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Policy applied to bodily injury or property damage if they were "caused by an 'occurrence' that takes place in the 'coverage territory'. . . [and] occurs during the policy

[3] There are additional facts concerning the Certificate, including that there was no apparent "written contract" as stated therein for its issuance, and the parties offer extensive arguments regarding its validity and effect, including the Estate's argument that United Fire should be estopped from denying coverage.  However, because we resolve this appeal on coverage grounds, we have not included the additional facts in this regard.

period."  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶7      United Fire denied Christian's request for defense and indemnification, stating the Policy had not been triggered by the claims and therefore afforded no coverage because "[n]o 'bodily injury,' 'property damage,' or 'personal and advertising injury,' as those terms are defined in the policy is alleged, and there was no 'occurrence.'"  Thereafter, Christian's Estate initiated this action against United Fire.

¶8      United Fire moved for summary judgment, and the District Court ruled the insurer had no duty to defend Christian, granting summary judgment to United Fire.  The District Court reasoned, *inter alia*, that even if the Policy applied to Christian as an additional insured, the pleadings of the underlying action "demonstrate[] the Parisians did not allege property damage which might be imputed to Christian."  Recognizing Parisians had alleged that "Christian was negligent in failing to honor his contractual duties to pay his subcontractors," the District Court nonetheless concluded "[t]his does not constitute a claim for 'bodily injury,' 'property damage,' or 'personal and advertising injury' that could be imputed to Christian."

¶9      The Estate appeals.

## STANDARDS OF REVIEW

¶10     Using the same criteria as the district court, "[t]his Court reviews a district court's entry of summary judgment and the interpretation of an insurance contract de novo."  *Nat'l Indem. Co. v. State*, 2021 MT 300, ¶ 21, 406 Mont. 288, 499 P.3d 516.  "Summary

5

judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2017 MT 246, ¶ 7, 389 Mont. 48, 403 P.3d 664 (citing M. R. Civ. P. 56). "If no material facts are in dispute, the question of whether or not an insurer breached its duty to defend is a question of law." *J & C Moodie Props., LLC v. Deck*, 2016 MT 301, ¶ 17, 385 Mont. 382, 384 P.3d 466.

¶11 "[G]eneral rules of contract law apply to insurance policies and [] we will construe those policies strictly against the insurer and in favor of the insured." *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 18, 361 Mont. 459, 260 P.3d 145. When interpreting the language of an insurance policy, this Court is "bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Steadele*, ¶ 18.

## DISCUSSION

¶12 *Did the District Court err by concluding United Fire had no duty to defend because the Parisian claims against Christian fell outside the scope of coverage of the subject policy?*

¶13 The Estate asserts the District Court erred by holding that Parisians did not allege property damage in their complaint that could have been imputed to Christian, which would have triggered the duty to defend and to indemnify under the United Fire Policy. Noting that "a court must liberally construe allegations in favor of finding that the obligation to defend was activated" under *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 22, 321 Mont. 99, 90 P.3d 381, the Estate argues that Parisians' allegations, including that they

6

were damaged by "Mr. Christian's negligence and/or failure to perform his contractual obligations," should be construed to invoke a property damage claim. Specifically, the Estate contends the language of Parisians' complaint "could only mean they were asserting a construction defect claim based on negligent construction of the project," for which contract and tort damages were sought.

¶14 The "threshold question" in assessing an insurer's duty to defend is "whether the complaint against the insured alleges facts that, if proven, would trigger policy coverage." *Fire Ins. Exch. v. Weitzel*, 2016 MT 113, ¶ 21, 383 Mont. 364, 371 P.3d 457 (quoting *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 26, 376 Mont. 80, 330 P.3d 1139); *see also Staples*, ¶ 21. As the Estate has noted, "[w]hen a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, ¶ 22. Unless "there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage." *Staples*, ¶ 22.

¶15 Despite the Estate's focus on the use of the term "negligence" used in complaint, Parisians' claims arose solely from their Buy-Sell Agreement with Christian and his failure to uphold his end of the Agreement. The complaint alleged that, under the Agreement, Christian was responsible for completing the Parisians' home, and that Christian contracted with Weatherall, who, in turn, contracted with Beveridge to complete the work owed to the

7

Parisians under the Agreement. Beveridge claimed he was not paid and sued Weatherall and the Parisians. In response, Parisians complained that "[a]ny damages incurred by [Beveridge] in this action were solely due to Mr. Christian's negligence and/or his failure to perform his contractual obligations which were owed to the Parisians and/or his subcontractual obligations owed to [Beveridge]."

¶16 The Estate attempts to expand Parisians' use of the term "negligence" to mean that the Parisians are claiming property damage by way of a construction defect. However, nowhere in Parisians' complaint do they allege a problem with their home itself, or any other injury beyond Christian's failure to pay Beveridge, which led to Beveridge's suit against Parisians. Instead, Parisians' complaint is entirely premised upon obtaining indemnity from Christian for the claims Beveridge brought against them, pursuant to the Buy-Sell Agreement with Christian. "As a general rule, when a party's claim is based solely upon a breach of the specific terms of an agreement, the action sounds in contract." *Dewey v. Stringer*, 2014 MT 136, ¶ 8, 375 Mont. 176, 325 P.3d 1236; *see also Generali v. Alexander*, 2004 MT 81, ¶ 25, 320 Mont. 450, 87 P.3d 1000 (plaintiffs' allegation that they were damaged in the amounts paid to defendant were claims "for these lost payments and not for physical injury to their property, nor for loss of use of that property.") Even liberally construing Parisians' complaint in favor of Christian, we conclude there is an unequivocal demonstration that the Policy's definitions of "property damage" caused by an "occurrence" cannot be read to encompass the claims.

¶17    We conclude the District Court properly held that United Fire appropriately denied

Christian's claims for defense and indemnification.

¶18    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR